**UNITED STATES**

v.

**Airman Basic Robert T. SCHWADE, FR 479–76–6897 Headquarters, 4500TH Air Base Wing (TAC).**

**ACM S24350.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 6 Nov. 1975.

Decided 1 July 1976.

Appellate counsel for the Accused: Colonel Jerry E. Conner and Major Byron D. Baur. Appellate counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major John A. Cutts III.

Before ROBERTS, Senior Judge, and HERMAN, ORSER and SANDERS, JJ.

**DECISION**

ORSER, Judge:

Tried by a special court-martial, with members, the accused was convicted, despite his not guilty pleas, of the larceny of a television set and failure to go at the time prescribed to his appointed place of duty, in violation of Articles 121 and 86, 10 U.S.C. §§ 921 and 886, Uniform Code of Military Justice. The approved sentence provides for a bad conduct discharge and forfeiture of $150.00 per month for two months.

On appeal, appellate defense counsel have assigned three errors for our consideration. We find merit in but one, a contention that the military judge erred in admitting, over defense objection, evidence derived from an interrogation of the accused.

The assigned error pertains to the larceny conviction. According to the evidence, on 21 March 1975, an employee of the Recreation Center, Langley Air Force Base, Virginia, discovered that the building had not been secured during the preceding night and that a 25 inch color television set was missing from the center. In late May, 1975, the property was found in the Hampton, Virginia home of a Mr. and Mrs. Benjamin O. Lotman, Junior. According to Mrs. Lotman, she purchased the television set from the accused during the month of March 1975, for $75.00 in cash and a cassette tape recorder and speakers.

Sergeant Torley, the security policeman who investigated the theft, testified that on 24 or 25 July 1975, he entered a room in the security police office where the accused was being interviewed by another security policeman. The interview concerned a matter unrelated to the television theft. The accused was attended by counsel, a Captain Jaenicke, assigned to the Langley Air Force Base Area Defense Office. At the time, though suspicion of the television set theft had focused on the accused, he had not yet been identified by Mrs. Lotman as the person who had sold her the stolen property.

Sergeant Torley informed Captain Jaenicke he desired to talk to the accused concerning the larceny of the television. Torley testified that though he could not recall the exact words, Captain Jaenicke replied to the effect that he did not know if he was representing the accused in connection with the television theft, and invited Torley to discuss the matter directly with him. Sergeant Torley did not, however, immediately seek to interview the accused. He postponed doing so until 26 August 1975. By that time, the investigation of the matter had further implicated the accused. Among other things, Mrs. Lotman and her husband had identified photographs of the accused as the person who had brought the stolen television set to their house and subsequently sold it to them.

On 26 August 1975, Sergeant Torley brought the accused to his office to be interrogated. At the outset of the session, the sergeant thoroughly advised him of his Article 31, Miranda/Tempia rights.[1] Though Torley provided the standard advice respecting counsel, he did not ask the accused whether he was represented by Captain Jaenicke. The accused acknowledged understanding of his rights and waived them all. He specifically declined the services of a lawyer. He then agreed to submit to questioning, qualified however, to the extent that he declined to execute a written statement. In the ensuing interview, the accused denied the theft of the television set but did admit being at the recreation center on the night it was removed. In response to further questions, according to Torley, the accused admitted that he had an eight track tape deck in his dormitory room. His description of the unit matched that of the tape deck Mrs. Lotman had earlier told Torley she had traded for the stolen television set. The accused, said Torley, agreed to permit him access to his room if he promised he would not confiscate the tape machine.

Armed with the information provided by the accused, Sergeant Torley sought and obtained search authority from the commander and seized the tape deck from the accused's room. The Lotmans subsequently viewed it and verified it was the same one they had traded for the stolen television set.

In support of their objection to admission of the evidence, the defense called Captain Jaenicke as a witness. Captain Jaenicke testified that on 24 July 1975, while at the security police office with the accused in connection with an unrelated matter, Sergeant Torley asked him if he represented the accused in the television theft investigation. Jaenicke said he replied he had not discussed the subject with the accused but would do so and let Torley know. He later conferred with the accused about the matter and, to the best of his recollection, the following day informed Torley that the ac-

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Tempia, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

cused would make no statement until Torley furnished him the details of the evidence implicating the accused. Torley purportedly replied he could not immediately accommodate him, but promised to do so when time permitted. Captain Jaenicke further testified that sometime between 25 July and 25 August 1975 (he could not recall the specific date), he telephoned the security police office in connection with an unrelated matter and Sergeant Torley answered the phone. Captain Jaenicke said he asked the sergeant when he intended to contact him to discuss the evidence he had against the accused respecting the television theft. Sergeant Torley allegedly replied he was extremely busy at that time, and besides, he did not have his notes available. He again promised he would contact Jaenicke when possible. Captain Jaenicke testified the investigator at no time contacted him as promised, nor did he provide him notice of his 26 August 1975 interrogation of the accused. Jaenicke asserted he made it clear to Torley that he was the accused's counsel in the television theft matter and no decision would be made on whether the accused would make a statement until Torley furnished him the facts known to the Government.

As previously noted, Sergeant Torley's recollection of his 24 or 25 July conversation with Captain Jaenicke significantly conflicted with Jaenicke's version. Furthermore, Sergeant Torley testified he could not recall any other discussions with Jaenicke concerning the matter between their 24 or 25 July conversation and 26 August 1975, the date he initially interrogated the accused.

Citing the very recent case of *United States v. McOmber* 1 M.J. 380, 1976, appellate defense counsel contend that Sergeant Torley's interrogation of the accused violated his right to his own counsel and consequently rendered his admission respecting presence at the scene of the theft and the derivative evidence secured during the search that followed the interrogation inadmissible. In *McOmber,* the United States Court of Military Appeals enunciated the rule

that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.

Though prior decisions of the Court made it abundantly clear it is error for Government investigators to deal directly with suspects once on notice they are represented by counsel, in each such case the error was deemed nullified and relief denied on the basis that the accused knowingly waived his right to an attorney and consented to be interrogated following a thorough Article 31, *Miranda/Tempia* warning. *United States v. Johnson,* 20 U.S.C.M.A. 320, 43 C.M.R. 160 (1971); *United States v. Flack,* 20 U.S.C.M.A. 201, 43 C.M.R. 41 (1970); *United States v. Estep,* 19 U.S.C.M.A. 201, 41 C.M.R. 201 (1970). By its *McOmber* decision the Court has now seen fit to eliminate the test for prejudice previously employed and grant relief solely on the basis of failure to provide an accused's known attorney an opportunity to be present during interrogation.

In their reply, appellate Government counsel understandably chose not to defend the interrogation of the accused in the absence of and without notification to Captain Jaenicke. Instead they take the position that the *McOmber* rule adopted by the Court of Military Appeals is not controlling. In their analysis, the rule is to be applied only prospectively to interrogations conducted after the date of the opinion, or alternatively, only to trials held thereafter. We disagree.

■ In our opinion, the Court of Military Appeals made it quite clear in *McOmber* that the rule adopted will dictate disposition in all cases containing this error thereafter decided. In *McOmber,* the Court not only announced the rule, but applied it and granted relief on finding that the Government had already had adequate notice of the required standard of investigatorial

conduct. Speaking for the Court, Chief Judge Fletcher observed that in prior decisions for at least the last five years, the Court had been steadily moving toward adoption of the rule. In granting relief in the *McOmber* circumstances, the Chief Judge declared that the Court of Military Appeals did not choose to be the first to condone "surreptitious interrogation technique which plainly seeks to deprive an individual of the effective assistance of counsel." The Court detected a continuing reluctance to heed its past guidance in this troublesome area and thus felt compelled to adopt the stern remedy of judicial sanction announced. As we read *McOmber*, we believe the Court intends the rule to be applied in each and every instance where the error heretofore condemned is detected.

■ Turning to the evidence, it is clear from the totality of circumstances that the accused's interrogator, Sergeant Torley, was on ample notice that the accused was represented by Captain Jaenicke in the criminal investigation being conducted. Though his recollection of his dealings with Captain Jaenicke and the captain's testimony concerning the matter differ in significant respects, even by Torley's own account he was undisputably aware that Jaenicke might be the accused's attorney. Thus, solely within the terms of the sergeant's understanding, he was obligated to ask the accused whether Captain Jaenicke represented him. As seen, however, though he provided an otherwise adequate warning to the accused at the outset of his interrogation, he did not specifically inquire about Jaenicke's possible representation. Conversely, standing alone, Captain Jaenicke's testimony leaves absolutely no room for doubt that he had an attorney-client relationship with the accused in the criminal investigation, that Sergeant Torley was well aware of it, and that the accused would not submit to interrogation, at least not until the sergeant provided Captain Jaenicke with the investigative facts in the matter so he could further advise his client.

In our assessment of the testimony, Captain Jaenicke's more emphatic recitation of his communications with Sergeant Torley is considerably more plausible than the somewhat less certain recollection of the sergeant. As the military judge neither made special findings of fact nor discussed the basis for his ruling which placed the accused's admission and the fruit of the search before the court, we cannot determine whether in so doing he chose to believe Sergeant Torley and discount the testimony of Captain Jaenicke. That seems unlikely however. It appears far more likely, especially in light of the fact that this case was tried prior to the Court of Military Appeals' decision in *United States v. McOmber, supra*, that the judge's ruling was bottomed on the undisputed factor that in the final analysis Sergeant Torley fully warned the accused and the latter waived his right to counsel and to remain silent. We find that since Sergeant Torley failed to notify Captain Jaenicke of the questioning of the accused, the *McOmber* sanction renders his admission involuntary and the evidence obtained on the basis of the information he supplied the Government inadmissible. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Collier*, 1 M.J. 358 (1976); *United States v. Armstrong*, 22 U.S. C.M.A. 438, 47 C.M.R. 479 (1973).

Even without reference to the *McOmber* rule, the recited circumstances raise, in our judgment, a fair risk that the accused, notwithstanding his personal waiver, was deprived of the effective assistance of his counsel. See *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *United States v. Best*, 6 U.S.C.M.A. 39, 19 C.M.R. 165 (1955). Not only was Sergeant Torley on notice that Captain Jaenicke represented the accused, he was moreover advised, if the captain is to be believed, that as a condition precedent to a decision on whether the accused would submit to questioning, he was required to furnish counsel with the investigative facts. Without debate, the investigator had not complied with that request, though according to Jaenicke he had

promised to do so, at the time he chose to interrogate the accused in the absence of and without notification to his attorney. These circumstances are akin to those in *Williams v. Brewer*, D.C., 375 F.Supp. 170 (1974), where the Court ruled the accused's statement inadmissible when made in the absence of his attorney after the interrogator made and then broke an agreement that the accused would not be questioned until after the attorney arrived in the city where he was charged. Whether Sergeant Torley's failure to provide the information and his professed unawareness that the accused was even represented by Captain Jaenicke "resulted from negligence rather than guile" the effect is the same. *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964). The conduct of the Government in obtaining the accused's statement in the absence of his attorney and without even providing the attorney the promised information, creates at least the impression of the kind of "dirty pool" criticized by the Court in *United States v. DeLoy*, 421 F.2d 900, 902 (5th Cir. 1970).

For the reasons stated, the affected finding of guilty (the specification of the Charge and the Charge) is hereby set aside. See *United States v. Anglin*, 18 U.S.C.M.A. 520, 40 C.M.R. 232 (1969); *United States v. Reynolds*, 16 U.S.C.M.A. 403, 37 C.M.R. 23 (1966). A rehearing may be directed.

ROBERTS, Senior Judge, and SANDERS, Judge, concur.

HERMAN, Judge (concurring in part and dissenting in part):

I have no difference with the decision of my brethren as far as it goes, but we part philosophic company with respect to the treatment of the Additional Charge and its specification. At the appropriate time in the trial, defense counsel moved to dismiss [1] this allegation of a failure to repair, on the grounds that it violated paragraph 26c, Manual for Courts-Martial, 1969 (Rev.), which provides:

Ordinarily, charges for minor derelictions should not be joined with charges for serious offenses. For example, a charge of failure to report for a routine roll call should not be joined with a charge of burglary. If, however, the minor offense serves to explain the circumstances of the greater offense, it is permissible to charge both.

In my opinion, the military judge erred in denying the motion.

The earliest source found for this provision is paragraph 67, Manual for Courts-Martial, 1917, which provided:

. . . To avoid taking up unnecessarily the time of a court with minor offenses, where charges are preferred for serious offenses, there should not be joined with them charges for minor derelictions, *unless the latter serve to explain the circumstances surrounding the serious offenses.* For instance charges for desertion should not ordinarily be joined with charges for losing through neglect Government property of small value; nor should charges for willful disobedience of the orders of a commissioned officer ordinarily be joined with charges for an absence from a routine duty. (Emphasis in original.)

The plain meaning of this language permits joining serious and minor charges where the latter explain the circumstances of the former; the italics used in the original text emphasize that this is the only permissible exception to the general prohibition. Thus, where a failure to repair serves to explain other charged offenses of willful disobedience and disrespect, joinder was held proper, *United States v. Wells*, 45 C.M.R. 501 (A.F.C.M.R.1972); *United States v. Crump*, 39 C.M.R. 899 (A.B.R.1968). See also *United States v. Healy*, 39 C.M.R. 636 (A.B.R. 1968), pet. denied, 39 C.M.R. 293 (1968).

It may appear to some that paragraph 26 c, Manual, *supra*, is inconsistent with para-

---

1. His failure to do so would have abandoned the objectionable procedure and would have barred him from raising the issue at this level. *United States v. Marymont*, 28 C.M.R. 904

(A.F.B.R.1960), aff'd and rev'd in part on other grounds, 11 U.S.C.M.A. 745, 29 C.M.R. 561 (1960).

graphs 30*g* and 33*h*, which state a further principle in the preferral of charges: that all known charges against an accused should be consolidated in a single trial by the lowest court that has the power to adjudge an appropriate and adequate punishment. However, cross references were placed in the 1969 Manual, *supra*,[2] with an obvious purpose to require consideration of both misjoinder of serious and minor charges and consolidation of charges, when preferral is accomplished. Thus, in my opinion, they are fully compatible when read together—known charges must be consolidated, but minor offenses should not be alleged unless they explain those which are serious.

Concern may arise, upon application of the misjoinder rule, that an accused may commit minor offenses with impunity while awaiting trial upon a serious charge. No rule however, prohibits the use of Article 15, UCMJ, during the pendency of a court-martial,[3] and if trial by court-martial is demanded for such minor offense, there could be no viable objection to the Additional Charge. See *United States v. Abbott*, 17 U.S.C.M.A. 141, 37 C.M.R. 405 (1967).

It is obvious that a failure to repair is among the most minor of offenses and is mentioned as such in each of the manuals quoted above, as well as the intervening manuals.[4] The serious offense in this case, the larceny, is alleged to have taken place on 20 March 1975. The accused became a suspect some months later, an investigation ensued, and the accused was formally charged on 15 October. Eight days later the charges were referred for trial by special court-martial. On that day, 23 October, the alleged failure to repair took place

when the accused did not appear for a class in drug and alcohol abuse, and human relations training. This charge was preferred, the accused informed of it, and the charge referred on the very next day, 24 October. That this failure to repair is not in the slightest manner related to the larceny charge is irrefutable. As such, it directly contravenes paragraph 26*c*, Manual, *supra*.

In an early Army case,[5] an absence without leave charge of two days was joined with a larceny of ten tires. Although the accused pled guilty to the absence, the plea was subsequent to a motion for a severance of that charge and specification which was denied. In dismissing the absence charge, the board explained,

. . . We find nothing in the entire record which would show any relevance between the alleged larceny in November and the two day absence without leave in January. . . .

. . . Paragraph 26*c* of the *Manual* establishes a standard or rule as to the joinder of offenses, and places a duty upon the law officer, when motion is made, to examine whether there has been compliance therewith. . . .

We find here that the law officer clearly abused his discretion in denying the defense counsel's motion for severance.

26 C.M.R. 692 at 694.

These facts closely parallel the instant case, with but one variance—the proof of the failure to repair in this case brought out an aggravating circumstance which, in my opinion, severely prejudiced the defendant. The inference is readily drawn from the failure of the accused to attend a drug and

---

2. Compare with the same paragraphs, Manual for Courts-Martial, 1951.

3. Paragraph 32*c*, Manual, *supra*, implies that Article 15, UCMJ, action is permissible and appropriate: "When the preliminary inquiry shows that additional or different offenses have been committed, . . . the immediate commander may prefer appropriate new charges *for those offenses which he believes cannot properly be disposed of under Article 15.*" (Emphasis supplied.)

4. Manual for Courts-Martial, 1921, where paragraph 67 was copied from the previous text, with the exception of the italicized portion and another punctuation change; Manual for Courts-Martial, 1928, paragraph 27; Manual for Courts-Martial, 1949, paragraph 27.

5. *United States v. Grant*, 26 C.M.R. 692 (A.B.R. 1958).

alcohol abuse class that he had a problem with one of these substances, which could provide some motive for the larceny. While this might be prejudicial if the accused was to have attended these classes prior to or contemporaneously with the alleged larceny, the charge becomes even more invidious since it occurred seven months after the alleged larceny.

Chief Judge Quinn of the United States Court of Military Appeals wrote, in a dissenting opinion some years ago:

> Joined with the charges considered above are two other charges. One alleged that that accused was drunk and disorderly in the orderly room . . . and the other that . . . he incapacitated himself for the proper performance of his duties by his previous indulgence in intoxicating liquor. These offenses are entirely unrelated to the other charges. They are among the most minor offenses in military law. It was, therefore, plainly improper to join these charges with one carrying a maximum penalty of confinement for life . . . In my opinion, a staff judge advocate should not permit such a joinder.

*United States v. Hines*, 7 U.S.C.M.A. 75, 21 C.M.R. 201, 208 (1956). His advice is wise and practical, and should have been followed in this case.

The issue of misjoinder of serious and minor offenses was considered in *United States v. Yelverton*, 40 C.M.R. 655 (A.B.R. 1969), with the conclusion that it is not improper *per se* to join serious charges with unrelated minor offenses. The Board of Review in that case found no prejudice, however, particularly in the light of the lack of objection or motion by trial defense counsel. A recent case, *United States v. Johnson*, 49 C.M.R. 477 (A.C.M.R.1974), reiterated the Army view of the permissive nature of paragraph 26c, Manual, *supra*, and held that the military judge did not abuse his discretion in denying a motion to sever the minor charges, further finding no fair risk of prejudice by the joinder.

In a recent case, however, the Army Court agreed that dismissal for misjoinder of a charge of assault upon a military policeman was appropriate, where the accused had been acquitted of the other charges of attempted murder and aggravated assault. *United States v. Smith*, 49 C.M.R. 416 (A.C. M.R.1974). Emphasizing the fact that trial defense counsel made an appropriate motion to dismiss the minor charge, Judge Minton, speaking for a majority, explained:

> I do not consider that dismissal is the only relief appropriate for an improper joinder of major and minor offenses even where prejudice is apparent, as in the instant case. Sentence adjustment might well be adequate under normal circumstances where proper conviction of other offenses remain. However, under the circumstances of the instant case, I have concluded that the only adequate remedy is disapproval of the findings and sentence and dismissal of the charge.

49 C.M.R. 416 at 420.

Although the case before this Court differs from *Smith*, in that the larceny charge may be reheard, it can serve no useful purpose for the failure to repair to be included in the rehearing, as it would be improper, in my view to once again misjoin these charges; it would further raise the same prejudicial inference that the accused had a drug or alcohol problem at the time of the larceny, and it could conceivably result in a requirement to reassess the sentence. I would dismiss the Additional Charge and its specification.