UNITED STATES

v.

Curtis E. GREEN, 430 92 9332, Hospital-
man Recruit (E–1) U. S. Navy.

NCM 78 1288.

U. S. Navy Court of Military Review.

4 May 1979.

LT David S. Durbin, JAGC, USNR, Ap-
pellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate
Government Counsel.

Before DUNBAR, GREGORY and
GLADIS, JJ.

GLADIS, Judge:

The accused was convicted at a special court-martial bench trial of wrongful possession of 200 tablets of demerol, a controlled substance, contrary to U. S. Navy Regulations, larceny of the demerol, and false swearing in violation of Articles 92, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921, 934. Prior reviewing authorities approved without change the adjudged sentence, which consists of a bad-conduct discharge, confinement at hard labor for 4 months, and forfeiture of $150.00 per month for 4 months. Among other things, the accused contends that the record was not properly authenticated and that his confession to the demerol offenses was inadmissible. We disagree.

On appeal the accused claims that the record of trial was improperly authenticated by trial counsel. The accused was tried in Okinawa on 25 May 1978. The record was authenticated by the trial counsel on 3 August 1978, because of the transfer of the military judge to the continental United States on permanent change of station orders. Trial defense counsel examined the record but did not contest its verity.

The legal requirements pertaining to the authentication of records of trial appear well settled:

The Uniform Code of Military Justice permits the trial counsel to authenticate a record of trial by general court-martial only if it "cannot be authenticated by the military judge by reason of his death, disability or absence." Article 54(a), Uniform Code of Military Justice, 10 U.S.C. § 854(a). Through the Manual for Courts-Martial, United States, 1969 (Revised Edition), the President has made the same rule apply to records of trial by special courts-martial when a bad-conduct discharge is involved. MCM, 1969 (Rev. Ed.), paragraphs 82f, 83a; see Article 54(b), UCMJ, supra.

The Court of Military Appeals has held that a trial counsel "impermissibly invoked" the " 'absence' provision" in authenticating a record of trial himself when it happened that the military judge was again present at the place of the trial within a reasonable time after the transcript was prepared and obtaining the judge's authentication would not necessarily have caused the accused to be confined for more than 90 days after trial awaiting the convening authority's action. *United States v. Cruz-Rijos,* 1 M.J. 429, 430–32 (C.M.A.1976). The Court observed that the goal of speedy appellate disposition, concededly important, must be weighed against the protection of the integrity of the judicial process that comes from having the record authenticated by the neutral judge. 1 M.J. at 431. The Court further indicated that authentication of the record by someone other than the judge should occur only when his absence gives rise to an emergency situation as contextually connoted by the terms "death, disability, or absence." Id.

*United States v. Andrade,* 3 M.J. 757 (A.C. M.R.1977).

■ A presumption of denial of speedy disposition of a case arises when the accused is continuously under restraint after trial and the convening and supervisory authorities do not promulgate their formal and final action within 90 days of the date of such restraint after completion of trial. *United States v. Brewer,* 1 M.J. 233 (C.M.A. 1975); *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

■ Weighing the goal of speedy appellate disposition against the protection of the integrity of the judicial process that comes from having the record authenticated by a neutral judge, we conclude that under the circumstances of this case the record was properly authenticated by the trial counsel in the absence of the judge. The purpose of Article 54(a), UCMJ, is to provide a preferred order of authentication which in fact will guarantee absolute verity to trial court records. *United States v. Credit,* 4 M.J. 118 (C.M.A.1977). There is no question of the verity of the record in this case. It appears that authentication by the trial counsel was necessary to insure the speedy disposition of this case. It was clearly not

feasible to mail the record from Okinawa to the judge in the United States for authentication and return when review of the authenticated record had to be completed and the final convening authority and supervisory authority actions promulgated within a period of about 3 weeks. The imminent threat of denial of speedy disposition constitutes the emergency situation contemplated in *Cruz-Rijos* which permits the trial counsel to authenticate the record of trial in the absence of the judge. The accused's contention lacks merit.

 The accused also contends that prosecution Exhibit 4, his confession to the demerol offenses, was improperly admitted because it was the result of unlawful inducement, obtained without contacting his attorney, taken without advising him that a previous statement could not be used against him, and obtained before the full panoply of rights had been explained to him. Resolution of the contentions that the confession was the result of improper inducement and obtained before his rights were fully explained hinges on credibility. Recognizing that the trial judge saw and heard the witnesses and resolved these issues against the accused, we conclude, after weighing the evidence, that the judge correctly rejected these contentions. The necessity for a warning that a prior statement could not be used against the accused is also an issue hinging on credibility. We resolve this issue against the accused as the military judge did, finding that the agent did not suspect or have reasonable grounds for suspecting the accused of an offense when he obtained the prior statement. *See generally* H. Moyer, *JUSTICE AND THE MILITARY* § 2–213 (1972). Therefore, the lack of *Miranda-Tempia*[1] warnings did not render the prior statement inadmissible and require advice to the accused that it could not be used against him.

Left for consideration is the accused's contention that his confession was inadmissible because it was obtained without contacting his attorney. Trial defense counsel entered into an attorney-client relationship with the accused in connection with the false swearing offense on 10 April 1978. Naval Investigative Service Agent McKenna interviewed the accused on 13 April 1978, during a preliminary investigation into the disappearance of the demerol, and obtained the confession from him on 17 April 1978, after properly advising him of his *Miranda-Tempia* rights. The accused waived these rights.[2] The accused did not advise the agent that he was represented by an attorney nor did he request to consult an attorney. The agent did not learn that the accused was represented by an attorney until 27 April 1978. He was aware, when he interviewed the accused on 17 April 1978, that the law center had requested the accused's service record because of an alleged false statement. He was not aware that the accused had been charged and made no inquiry concerning the matter.

 Once an investigator is on notice that an attorney is representing an individual in a military criminal investigation, the attorney must be given an opportunity to be present during the questioning of his client. If such opportunity is not accorded the attorney, any statement by his client is rendered involuntary. *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976); *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976). In *United States v. Schwade*, 1 M.J. 887 (A.F.C.M.R.1976), the Air Force court stated in *dicta* that where an investigator indisputably is aware that the accused might be represented by an attorney, he is obligated to ask the accused whether he is so represented.[3] In *United States v. Roy*, 4 M.J. 840 (A.C.M.R.1978), in the absence of a showing of bad faith or an attempt to circumvent the holding of *McOmber* and *Low-*

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. As noted above the evidence is conflicting.

3. There was ample evidence in the record in *Schwade* that the investigator actually knew the accused was represented by an attorney. The appellate court indicated that it disbelieved the investigator's protestations to the contrary.

*ry,* the Army court declined to extend the holding of those cases to a situation in which the investigator probably should have known, but in fact did not know, that the accused had counsel. The Army court noted that in *McOmber* and *Lowry* the investigator had actual knowledge of the accused's representation by counsel.

■ Under the circumstances of this case we conclude that the investigator was not on notice within the meaning of *United States v. McOmber, supra,* that the accused was represented by an attorney. In *McOmber,* the Court of Military Appeals was faced with an investigator who utilized a surreptitious interrogation technique which plainly sought to deprive the accused of the effective assistance of counsel. The explicit rationale underlying the rule in *McOmber* is the necessity to preserve the right to counsel where an investigator questions an accused known to be represented by counsel. *Id.* at 383. We find nothing in *McOmber* or *Lowry* to prohibit questioning of an accused who is not known by the investigator to be represented by counsel. Therefore, we adopt the position of our Army brethren in *United States v. Roy, supra,* and hold that the investigator in this case had no duty to ask whether the accused was represented by counsel. *Accord, United States v. Cuevas-Ovalle,* 6 M.J. 909 (A.C.M.R.1979). The ensuing confession was voluntary. The accused's contention to the contrary lacks merit. The remaining assignments of error are also without merit.

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Senior Judge DUNBAR and Judge GREGORY concur.