UNITED STATES, Appellee,

v.

Daniel F. IVERSON, Private, U. S. Army, Appellant.

No. 31,962.

CM 433471.

U. S. Court of Military Appeals.

Oct. 16, 1978.

For Appellant—*Captain Derryl W. Peden* (argued); *Colonel Alton H. Harvey* (on brief); *Captain John C. Carr* (on brief); *Captain Michael B. Dinning.*

For Appellee—*Captain Dale L. Anderson* (argued); *Colonel Thomas H. Davis* (on brief); *Lieutenant Colonel Donald W. Hansen* (on petition); *Major John T. Sherwood, Jr.* (on brief); *Major Michael B. Kennett*; *Captain Richard S. Kleager* (on brief).

Opinion of the Court

PERRY, Judge:

The appellant was convicted by a general court-martial of possession and sale of marijuana and of possession of an unregistered firearm, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a bad-conduct discharge, confinement for 8 months, forfeiture of $200 pay per month for 8 months and reduction to the lowest enlisted grade. The United States Army Court of Military Review has affirmed.[1] We granted review to consider the appellant's contention that he was prejudiced by the erroneous failure of the Government to serve a copy of the post-trial review upon his trial defense attorney.

---

1. *United States v. Iverson*, 2 M.J. 489 (A.C.M.R.1975).

The court-martial that convicted the appellant was convened by the Commanding General of Fort Carson, Colorado, who also was the Commander of the 4th Infantry Division (Mechanized). That convening authority and his staff judge advocate were disqualified from conducting the post-trial review and action. Those duties were performed by the Staff Judge Advocate and Commanding General of the 1st Infantry Division and Fort Riley, Kansas. After the trial, the appellant was transferred to the United States Disciplinary Barracks at Fort Leavenworth, Kansas. His trial defense attorney remained assigned to Fort Carson and apparently has had no further contact with the appellant. The post-trial review was delivered to another attorney, the chief defense counsel at Fort Riley, on June 6, 1975. That attorney had no prior connection with the case and the record does not disclose that he communicated with either the appellant or the original trial defense attorney after he received the post-trial review. On June 11, 1975, he advised the new convening authority that he had determined that there was nothing to submit in explanation or as rebuttal.[2]

This Court has stated that the post-trial review of the staff judge advocate must "be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." *United States v. Goode,* 1 M.J. 3, 6 (C.M.A.1975). The purpose of imposing this obligation was "to eliminate delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such errors could easily and expeditiously be resolved prior to the convening and supervisory authorities' actions." *United States v. Hill,* 3 M.J. 295, 296 (C.M.A.1977).

In the majority opinion disposing of the appellant's case below, the Court of Military Review—after noting that no attorney-client relationship had been created between the appellant and his substituted defense counsel, either by way of the appellant's consenting to counsel's representing him or even to the extent of communications between the two of them—held:[3]

> Although a complete relationship must be developed for representation during the trial itself, we do not believe that the Court of Military Appeals intended such a relationship to be a condition precedent to compliance with *Goode.*

*Cf. United States v. Miller,* 2 M.J. 767 (A.C. M.R.1976), where another panel of that court determined that *Goode* did contemplate an attorney-client relationship with trial defense counsel which cannot be severed without good reason—which does not include routine transfer of duty station assignments—and that, assuming the existence of such a justification, substitution of counsel normally can occur only with the accused's consent. (Judge DeFord dissented, agreeing with the *Iverson* panel that *Goode* can be satisfied by "something less than the normal attorney-client relationship required during trial and pretrial proceedings." *Id.* at 772.)

█ We are satisfied that the attorney-client relationship must exist for anyone to function as "counsel for the accused." *United States v. Goode, supra* at 6. Because this attorney is called upon to act in the accused's behalf with respect to the review and, indeed, possesses authority to waive most errors in the review,[4] there can be no doubt that he is commissioned as an advocate, not as an *amicus curiae.* See *Anders v. California,* 386 U.S. 738, 87 S.Ct.

---

**2.** The Fort Riley defense attorney subsequently filed an affidavit with the Court of Military Review in which he stated that he was asked to act as defense counsel for the appellant for the purpose of examining the record of trial and the review of the staff judge advocate and that he did perform those duties. He also stated that he had no earlier connection with the case, had no communication with the appellant, had no knowledge that any convening authority had detailed him to act as appellant's counsel, and had never been specifically requested as counsel for the appellant.

**3.** *United States v. Iverson, supra,* at 491.

**4.** *United States v. Morrison,* 3 M.J. 408 (C.M.A. 1977); *United States v. Barnes,* 3 M.J. 406 (C.M.A.1977).

1396, 18 L.Ed.2d 493 (1967). It must be remembered that it is the *accused's* interests which are at stake in the review, and it is the *accused's* welfare which will be affected by an appellate conclusion that "counsel for the accused" effectively waived a complaint with the review by failing to comment thereon. For this to be the case, the agency relationship of attorney-client [5] must have been formed.

Additionally, it would seem logical to demand that the attorney who does perform the *Goode* task normally be the trial defense counsel. The attorney who so acts is required to have a thorough grasp of the facts and the law involved in an accused's trial and to be capable of digesting the post-trial review in light of those facts and law so as to file a meaningful response to the review, if any there be, within 5 days of having been served. By placing the burden on counsel to perform such a duty within this short period, we believe the Court in *Goode* contemplated that, normally, the trial defense counsel would fill this role.

In *United States v. Palenius,* 2 M.J. 86 (C.M.A.1977), we noted that the attorney-client relationship between the accused and the attorney who represented him at trial continues after entry of the judgment in order to assure that the accused's rights and protections will be afforded him without lapse of representation pending entry of his case into the appellate system. We outlined the minimum duties which trial defense attorneys should perform on behalf of their convicted clients:

> [The trial defense counsel] should take action on behalf of his client as necessary during the intermediate reviews contemplated by the Uniform Code of Military Justice. This includes the reviewing of the staff judge advocate's report with his client and the presentation of pleas to the convening authority for modification or reduction of sentence if in his or his client's judgment such is appropriate or desirable.

. . . . .

> [T]he trial defense attorney can and should remain attentive to the needs of his client by rendering him such advice and assistance as the exigencies of the particular case might require.

. . . . .

> The trial defense attorney can with honor and should maintain the attorney-client relationship with his client subsequent to the finding of guilty while performing the duties we set forth today until substitute trial counsel or appellate counsel have been properly designated and have commenced the performance of their duties, thus rendering further representation by the original trial defense attorney or those properly substituted in his place unnecessary.

*Id.* at 93 (footnote omitted).

We also set forth the procedure by which the original trial defense attorney can be relieved of the duty of further representation of the convicted accused. However, the appellant was convicted prior to our decision in *Palenius.* Nevertheless, this Court had previously addressed arbitrary interferences with the relationship between the accused and his attorney. In *United States v. Murray,* 20 U.S.C.M.A. 61, 62, 42 C.M.R. 253, 254 (1970), we stated that "[o]nce entered into, the relationship between the accused and his appointed military counsel may not be severed or materially altered for administrative convenience. *United States v. Tellier,* 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962)." This includes "a routine change of assignment." *Id.* While this Court's precedent does recognize that the existence of *"good cause"* will justify termination of the relationship, *United States v. Eason,* 21 U.S.C.M.A. 335, 339, 45 C.M.R. 109, 113 (1972), *Eason* itself cautioned that "a financial, logistical, and administrative burden on the Government" does *not* rise to the level of "good cause." *Id.* at 340, 45 C.M.R. at 114. Absent a truly extraordinary circumstance rendering virtually impossible the continuation of the

---

**5.** *See United States v. Larneard,* 3 M.J. 76, 81 (C.M.A.1977).

established relationship,[6] only the accused may terminate the existing affiliation with his trial defense counsel[7] prior to the case reaching the appellate level.[8]

 Whenever such an unusual occasion does arise, it is vital that certain prerequisites be followed in order that a proper relationship be created between the accused and his new attorney.[9] The Court's opinion in *United States v. Miller*, 7 U.S.C.M.A. 23, 28, 21 C.M.R. 149, 154 (1956), is instructive in this regard:

> The relationship between an attorney and client is personal and privileged. It involves confidence, trust and cooperation. Where counsel is appointed to represent one charged with an offense, the offender is entitled to protest, if the lawyer selected is objectionable to him. In the military system, if an accused has just cause for complaint against his defender, such as hostility or incompetency, he is entitled to request the appointment of other counsel. Furthermore, he is entitled to reject the services of appointed officers and employ, at his own expense, the services of civilian counsel. It may be that where an accused does not retain the services of civilian counsel, or prevail upon individual counsel to undertake his defense, or object with good cause to the representation by counsel appointed for him, he is deemed to have concurred in the appointment. However, that notion of implied

consent or acquiescence is not peculiar to the military system, but is operative in every system which relies, in whole or in part, on public defenders or court-appointed counsel.

. . . . .

> Here we have no way of knowing whether accused was informed that he was being represented by counsel chosen by the convening authority. He could not consent if he did not know. Apparently the military service decided he had no voice in the matter as they chose to ignore him personally. [This was improper.]

Shortly thereafter, the Court re-emphasized that acceptance by the accused is an absolute necessity to the establishment of an attorney-client relationship. *United States v. Brady*, 8 U.S.C.M.A. 456, 460, 24 C.M.R. 266, 270 (1957). Indeed, one cannot act as an agent, *see United States v. Palenius, supra*, without the knowledge and consent of the principal.[10]

We agree with observations made by the United States Army Court of Military Review in *United States v. Miller*, 2 M.J. 767, 768 (A.C.M.R.1976) (footnotes omitted):

> The right of a defendant to be represented by counsel is basic to the military justice system. "The right to services of counsel is substantial and extends both to the pretrial and the trial proceedings."

---

**6.** Nothing in this opinion is meant to prohibit the appointment of local defense counsel to coordinate with a trial defense counsel who may be many miles away. Our concern is with the preservation of an existing attorney-client relationship and with the attorney in that relationship being permitted to fully execute his continuing professional responsibilities, not with restricting administrative procedures which might be deemed appropriate in a given case to facilitate that continued representation.

**7.** *See United States v. Andrews*, 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972).

**8.** Article 70(c), Uniform Code of Military Justice, 10 U.S.C. § 870(c); *see United States v. Palenius*, 2 M.J. 86 (C.M.A.1977).

**9.** Once a proper relationship has been established with the accused, it is expected that, because of the practical difficulties noted earli-

er confronting new counsel entering a case at this stage, such counsel would take immediate steps to discuss the substance of the case with his client and, if possible, with trial defense counsel.

**10.** Analogy to the appellate defense divisions of the various services as an argument to the contrary, as was made by the court below, *see United States v. Iverson, supra*, is inapposite, for those normally become involved in the case upon the request of the appellant. Article 70(c), *supra*. Whether he knows the name of the specific counsel detailed to represent him is not relevant, for he does know that his trial defense counsel no longer represents him for purposes of the appeal and that an appellate counsel at his request now does so. Effectively, then, he has consented to his newly appointed counsel.

Further, "a defense counsel's duty to represent an accused does not end with the court-martial findings." In point of fact, paragraph 48*k*, MCM 1969 (Rev.), specifies five separate tasks under the heading "Counsel for the Accused—*Duties After Trial*."

It was precisely for the purpose of enabling the defense counsel to more effectively perform some of these post-trial duties that two of the precursor cases to *United States v. Goode, supra*, strongly recommended the adoption of the practice of serving a copy of the post-trial review on counsel for the accused. The court's opinion in *United States v. Goode, supra*, has added another post-trial task for the defense counsel to perform, that is, to comment upon the post-trial review.

■ There is no indication that the appellant's trial defense counsel was not available to continue to represent his client. *See United States v. Palenius, supra*. The administrative inconvenience of having to send the review a short distance away to another installation does not operate as an adequate factor to terminate an established attorney-client relationship. *United States v. Eason, supra; United States v. Murray, supra*. Under these circumstances, because such relationship improperly was interrupted by the Government, the purposes of *Goode* were not served.

It remains to be considered what is the appropriate remedy for such a breach. The appellant urges that dismissal ought to occur, claiming that the mandate of *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), cannot be met with regard to any presently ordered new review and action. On the other hand, the Government suggests that, as no error in the review has yet to be identified by the appellant, the *Goode* error under these circumstances ought to be tested for prejudice and, there being none, the case may be affirmed. Neither of these alternatives strikes us as being quite appropriate.

This case is *no* different from any other in which, for some reason, a new convening authority's action must be ordered. *See*

*United States v. Chavez-Rey*, 1 M.J. 34 (C.M.A.1975). As long as the original action was taken within the 90 days prescribed by *Dunlap*, it never has been concluded that dismissal must follow because the subsequently ordered action did not, and we decline to impose that sanction in this case.

On the other hand, we do not believe that a failure to permit trial defense counsel to fulfill his or her role under *Goode* and *Palenius* can be dismissed as nonprejudicial. In *United States v. Hill, supra*, we declined to test for prejudice when no counsel had had the opportunity to respond to the staff judge advocate's review. Our solution here will be the same which we there employed. The integrity of this stage of the development of an accused's case depends upon the trial defense counsel's being permitted to perform as anticipated.

The decision of the United States Army Court of Military Review is reversed and the action of the convening authority is set aside. The record is returned to The Judge Advocate General of the Army for remand for a new review and action, the latter to be taken after compliance with the mandate of *United States v. Goode, supra*, as interpreted herein.

FLETCHER, Chief Judge (concurring):

I concur with the lead opinion in both its analysis of the particular facts and legal issues before this Court and the result reached.

There exists no doubt in my mind that compliance with *United States v. Goode*, 1 M.J. 3, 6 (C.M.A.1975), anticipates service of the review of the staff judge advocate for comment *on the trial defense counsel*. Likewise, it seems clear that the accused may consent to the severance of the trial attorney-client relationship and accept the services of counsel who was not present at the court-martial to perform this post-trial defense function. Article 38, Uniform Code of Military Justice, 10 U.S.C. § 838. · *See United States v. Annis*, 5 M.J. 351 (C.M.A. 1978). However, without such a knowing and voluntary waiver by an accused, only

good cause of the extraordinary nature as delineated in the lead opinion will justify interference by the Government with an existing attorney-client relationship even at the stage of proceedings embraced in *United States v. Goode, supra.* In view of existing military case law, administrative convenience under the circumstances of the present case simply does not amount to good cause sufficient to justify its severance or material alteration. Accordingly, since the appellant did not voluntarily and intelligently waive the continuous services of his trial defense counsel or accept the services of substitute counsel, the mandate of *United States v. Goode, supra,* has been violated and the remedial action taken in *United States v. Hill,* 3 M.J. 295 (C.M.A.1977) is appropriate.

COOK, Judge (concurring in the result):

Under *United States v. Goode,* 1 M.J. 3, 6 (C.M.A.1975), before a convening authority acts on a case which requires a post-trial review by his staff judge advocate, a copy of the review must be served on counsel for the accused at least 5 days before the commander's action to allow counsel the "opportunity to correct or challenge any matter [in the review] he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment." The record here contains a certificate by a lawyer which describes him as "Defense Counsel" and the accused as his "client." The certificate represents that counsel was provided with a copy of the post-trial review, and that he did not "desire" to submit anything "in explanation or rebuttal." The document is dated more than 5 days before the date of the convening authority's action. If the accused was, in fact, the lawyer's "client," and the lawyer was, in fact, defense counsel in the case, then the requirements of *Goode* were met. We are told, however, that the lawyer was not authorized to represent the accused. Consequently, the real question is not whether the *Goode* rule was violated, but whether the attorney who purported to be defense counsel was actually empowered to act for the accused during the proceedings before the court-martial authority.

1. *The Authority to Appoint New Counsel for the Purpose of Goode.*

In *United States v. Daly,* 4 M.J. 145 (C.M.A.1977), the Court denied an application by the Government to inquire into the authority of a lawyer to petition for grant of review on behalf of an accused. The Court observed that "an attorney and counselor in the bar of a court who appears in that court in behalf of a client is *presumed* to be so authorized." *Id.* at 146 (footnote omitted). I dissented on the ground that the presumption did not prevent inquiry into the actuality of counsel's right to represent the accused. *See also United States v. Brady,* 8 U.S.C.M.A. 456, 24 C.M.R. 266 (1957).

In this case the accused was represented at trial by a lawyer other than the one who acted in the proceedings before the court-martial authority. Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), and previous decisions of this Court, clearly contemplate that the defense counsel at trial continues as such for the post-conviction proceedings before the convening authority. *See* Cook, *Courts-Martial: The Third System in American Criminal Law,* 1 So.Ill.L.J. 1, 12–13 (1978). This Court has always been sensitive to termination of an established relationship between an accused and an attorney in a court-martial case by means other than consent. The rule that has evolved is that the relationship can be terminated, without the accused's consent, on a showing of "good cause." *United States v. Timberlake,* 22 U.S.C.M.A. 117, 119, 46 C.M.R. 117, 119 (1973).

2. *The General Standard for New Counsel.*

Judge Perry acknowledges the "good cause" standard for termination of an attorney-client relationship, but his perception of its nature gives me concern. To me "good cause" means that the circumstances make termination of an existing attorney-client relationship reasonable and the termination presents no reasonably foreseeable harm to the accused. However, Judge Per-

ry perceives it as demanding "a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship." That conception of the standard impresses me as being qualitatively far broader than the Court's previous view of it. *United States v. Andrews*, 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972), which is cited in support of the emendation is, in my opinion, merely illustrative of the rule of reasonableness.

*Andrews* was decided after *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964), and before *United States v. Timberlake, supra*, both of which applied the "good cause" rule to determine the legality of the termination of an existing attorney-client relationship. Andrews was represented by two military lawyers, one of whom was Captain Wayne. A question arose during trial as to accused's mental competency. As a result, trial was twice continued to allow psychiatric evaluation of the accused. Between the second adjournment and the reconvening of the court, Captain Wayne was separated from the service. Both he and the accused wanted to continue their attorney-client relationship for the remainder of the trial. They agreed that accused would retain Wayne as individual civilian counsel at no cost except reimbursement of Wayne's travel expenses between Boston, Massachusetts, and Fort Myer, Virginia, the place of trial. However, the agreement was frustrated by an erroneous ruling by the Chief of the Military Affairs Division of the Office of the Judge Advocate General that continuation of the relationship with Wayne as civilian counsel would violate federal law. The trial was completed, with the accused being represented only by the previously appointed military counsel.

In this Court, Andrews challenged his conviction on the ground that what had transpired in regard to his relationship with Wayne was prejudicial error. He presented three contentions; two of these are directly relevant. They are:

(1) That his established attorney-client relationship with Captain Wayne was improperly terminated. In support, he relied on *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970), in which this Court held that a "routine change of assignment" did not justify termination of an established attorney-client relationship between accused and appointed military counsel; and

(2) That he "was denied [the] right to civilian counsel of his own choice as guaranteed by Article 38(b), Code," *supra*.

The Court held that Andrews had been "deprived . . . of his statutory right to have the *civilian counsel* of his choice." 21 U.S.C.M.A. at 168, 44 C.M.R. at 222 (emphasis supplied). The unarticulated assumption of the Court's opinion is that the previously existing relationship with Captain Wayne as military counsel had been properly terminated because the captain had been separated from the service. Separation from the service cannot, I am sure, qualify as a "truly extraordinary circumstance," but neither is it a "routine change of assignment" which may not constitute "good cause" to terminate an established relationship. *United States v. Murray, supra* at 62, 42 C.M.R. at 254. The Court's opinion in *Andrews* plainly applied the "good cause" test for termination on the basis of reasonableness, not as a test for the extraordinary.[1]

Aside from disagreeing with the meaning Judge Perry apparently attributes to "good cause" for termination, there is another statement in his opinion that merits special comment. This statement concerns termination "only" by an accused "prior to the case reaching the appellate level."

3. *Considerations Appropriate to Appointment of New Counsel.*

A. *Case Returned to Command by Appellate Authority.*

Approximately 30 cases are now before the Court awaiting disposition of this issue.

---

1. Illness also can hardly be considered an "extraordinary circumstance." In *United States v. Massey*, 14 U.S.C.M.A. 486, 34 C.M.R. 266 (1964), the Court sustained the termination of an established attorney-client relationship with military counsel because of the serious illness of counsel's father.

I have no desire to burden this opinion with the separate facts of these cases,[2] but some involve proceedings at the command level, not on initial review of a conviction, as here, but because of remand by a Court of Military Review. In my opinion, when a case leaves the command level, the attorney-client relationship between the accused and military counsel at that level ends by operation of law. I believe my opinion is justified by the intention of Congress in providing for special appellate defense counsel in Article 70, Code, *supra*; by the holding in *United States v. Reeves*, 1 U.S.C.M.A. 388, 390, 3 C.M.R. 122, 124 (1952), that a court-martial proceeding has three separate stages—the trial level, the service appellate level, and the proceedings in this Court; by the holding in this Court that the attorney-client relationship between the accused and military appellate defense counsel terminates by operation of law when proceedings in the appellate forum are concluded, *United States v. Kelker*, 4 M.J. 323 (C.M.A.1978); and the remand by this Court in *United States v. Silas*, 1 M.J. 7, 8 (C.M.A. 1975), for a new review by the convening authority with direction to accord the accused "the right to counsel, as provided in Article 38(b) . . . and a copy of the new post-trial review should be served upon such counsel as the accused obtains," rather than an instruction that trial defense counsel be served with the post-trial review.

The principal opinion in *United States v. Palenius*, 2 M.J. 86, 93 (C.M.A.1977), indicates that, even after appellate defense counsel has entered a case and "commenced the performance of" his duties, trial defense counsel must apply "to the judge or court then having jurisdiction of the cause to be relieved of the duty of further representation of the convicted accused." I disagreed with that statement in my separate opinion. Suffice it now to note that after the convening authority has acted and forwarded a

record for further review, the only court having "jurisdiction" of the cause is the appellate forum. *United States v. Shulthise*, 14 U.S.C.M.A. 31, 33 C.M.R. 243 (1963). Providing an accused with uninterrupted representation by counsel does not, in my opinion, require that trial defense counsel file a formal application for leave to withdraw in a forum that is likely to be very distant from his place of duty.

### B. Relationship between the Goode rule and the Dunlap rule.

Besides separation from the service, other changes affecting defense counsel justify, in my opinion, the appointment of new counsel for the post-conviction review, without regard to accused's personal desire to retain an existing attorney-client relationship. It must be remembered that the *Goode* rule is a rule of judicial convenience, and it should not be utilized to impose onerous burdens upon the Government that are not within the framework of the Uniform Code and the procedural requirements of the Manual for Courts-Martial, United States, 1969 (Revised edition). The opinion in the case expressly indicates the rule was designed only to cut down on "recurrent complaints" about inadequacies in the post-trial review of the staff judge advocate and "the delay in determining . . . [on appeal the] validity [of the complaints] and correction" of the deficiencies.

Without *Goode*, neither the accused nor his counsel is entitled, as of right, to a copy of the staff judge advocate's review and a period of time to respond to it before the convening authority acts on the case, although accused is entitled to be informed of, and afforded the opportunity to rebut or explain adverse matter included in it that comes from outside the record and was not disclosed by him for the review. Manual, *supra*, para. 85*b*; *United States v. Beatty*, 10 U.S.C.M.A. 311, 27 C.M.R. 385 (1959).[3]

2. For example, in *United States v. Brown*, 5 M.J. 454 (C.M.A.1978), at the time the post-trial review was ready for service, trial defense counsel was under treatment in a hospital in another command and manifestly not in a condition to examine and respond to the

review within the period prescribed by *United States v. Goode*, 1 M.J. 3 (C.M.A.1975).

3. For the genesis of the Manual provision, *see United States v. Griffin*, 8 U.S.C.M.A. 206, 24 C.M.R. 16 (1957); *United States v. Lanford*, 6

In my opinion, substitution of counsel on the eve, or in the course, of trial involves entirely different considerations from substitution of counsel for the *Goode* rule and, therefore, the measure of "good cause" for the former is an unsuitable standard by which to determine "good cause" for the latter. In a different but related aspect of the review proceedings before the convening authority, Judge Latimer made the following pertinent observation:

[W]e are resolving the rights and privileges of an accused after a finding and sentence. Some of the strict formality demanded before conviction is relaxed after an accused is convicted and his punishment imposed.

*United States v. Lanford*, 6 U.S.C.M.A. 371, 382, 20 C.M.R. 87, 98 (1955).

*Goode* had a very substantial impact on the obligation of a convening authority to make timely disposition of a case within the limitation prescribed in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). Under *Dunlap*, the convening authority must act upon a case within 90 days of the conclusion of trial or suffer the presumption that he had prejudiced the accused by tardy action. With the presumption in effect, the charges must be dismissed, unless the Government demonstrates on the record that extraordinary circumstances justified action beyond the 90-day period. *See United States v. Henderson*, 1 M.J. 421 (C.M.A.1976). *Goode* requires that defense counsel be allowed 5 days to respond to the staff judge advocate's review; and this period does not extend the time the convening authority has to act on the case without being subject to the presumption that he prejudicially delayed its disposition. The practical effect of *Goode*, therefore, is to reduce from 90 days to 85 days the time to review the case without being burdened with a presumption of prejudice.

So many variables enter into preparation of a record of trial and the preparation of the staff judge advocate's post-trial review that I suppose no true "average time" can reasonably be calculated. Records in this Court, however, suggest that, for many reasons in many cases, the *Goode* rule has probably compelled the convening authority to endure severe administrative burdens to meet the requirement that he allow defense counsel 5 days to reply to the staff judge advocate's review.

One circumstance that gives rise to major difficulty is reassignment of trial defense counsel to duty outside the jurisdiction of the convening authority before completion of the post-trial review. Counsel's presence at a distant place means more time must be allowed for compliance with *Goode* because defense counsel's 5-day period cannot begin to run until he receives his copy of the post-trial review. The greater the distance, the greater the likelihood the convening authority will have less than 85 days for the post-trial proceedings to avoid the presumption of prejudice under the *Dunlap* rule.

In *United States v. Bryant*, 3 M.J. 396 (C.M.A.1977), the Court held that an "unforeseen" and inordinate delay in the delivery of a post-trial advice, sent by registered air mail to defense counsel at a place of temporary duty away from the place of command was not chargeable to the convening authority. Elimination of that time saved the convening authority from the presumption of prejudicial delay. However, *Bryant* did not say that the convening authority is not chargeable with the time *reasonably required* to transmit a copy of the post-trial review to a defense counsel. Thus, in calculating the time remaining to him to act after completion of the post-trial review, the convening authority must take account of the time normally required to transmit to defense counsel a copy of a post-trial review. The result is that in any instance that defense counsel is scheduled for reassignment of duty outside the command before probable completion of the post-trial review, the assignment must be rescheduled, or the convening authority must reorder his priorities to insure completion of the post-trial review in time to

U.S.C.M.A. 371, 381, 20 C.M.R. 87, 97 (1955); *United States v. Long*, 5 U.S.C.M.A. 572, 574,

18 C.M.R. 196, 198 (1955). *Cf.* Manual for Courts-Martial, United States, 1951, para. 85*b*.

transmit a copy to absent counsel and to allow him the 5-day period *Goode* provides for examination and response and still be within the *Dunlap* rule.[4] I concurred in *Goode*. At the time I did, I did not perceive it to command any such result; and I do not construe it now as doing so.

To me the *Goode* rule was propounded on the unstated but implicit assumption that defense counsel would be physically in the command and ready and able to receive the review, and respond to it within a 5-day period. When counsel is away from the command at a distant place, or is present but suffering from an illness or other disability,[5] and the circumstances manifest that the period for receipt, review, and reply will extend beyond 5 days, the *Goode* assumption simply does not exist. The rule, therefore, cannot be applied without the substitution of counsel.[6] Consequently, the relationship between *Dunlap* and *Goode* is a factor in the determination of "good cause" for appointment of new counsel to comply with *Goode*. This is not to say, of course, that if trial defense counsel wants to submit matter to the convening authority relating to the case he cannot do so. Certainly he can; Article 38(a) of the Uniform Code, 10 U.S.C.A. § 838(a) assures him that right. The right exists independent of the *Goode* right to receive a copy of the post-trial review. *See United States v. Beatty, supra* at 313, 27 C.M.R. at 387.

### C. Limitation of Goode According to Its Purpose.

I have already emphasized that the *Goode* rule was promulgated to relieve appellate tribunals of the burden of "recurrent complaints" about deficiencies in the post-trial review. Substitution of counsel under the sort of circumstances I have mentioned poses no risk of impairment of that purpose. To allow substitution only for "a truly compelling extraordinary circumstance" or with accused's consent, as postulated in the principal opinion, strikes me as an unreasonable and unnecessary interference with the ordinary course of personnel duty assignments. I do not believe that the military authorities should be burdened in the discharge of their own responsibilities just to serve the convenience of this or any other court.

### 4. The Facts of this Case.

Returning to this case, I am willing to assume, but do not find it necessary to decide, that transfer of the accused to the Disciplinary Barracks at Fort Leavenworth, Kansas, and the forwarding of the case to the commander of Fort Riley, Kansas, for review because of the disqualification of the original convening authority constituted "good cause" to terminate the established attorney-client relationship between the accused and his trial defense counsel.[7] That circumstance does not, however, provide a complete answer to the accused's challenge to the authority of the successor attorney.

In my separate opinion in *Palenius, supra* at 94, I commented on the need to consider the accused's "wishes" in regard to establishment of an attorney-client relationship with a new lawyer appointed for him.

---

4. I have discussed the question of defense counsel's absence on the assumption that normal channels of communication are open and regularly functioning. *United States v. Bryant,* 3 M.J. 396 (C.M.A.1977), suggests that combat or emergency conditions might make the time required for transmission of a copy of the review not chargeable to the convening authority.

5. *See* n. 2.

6. I recognize that civilian counsel retained by an accused may have come from a place far removed from the command in which the accused was tried and in which the record is to be reviewed. The *Dunlap* [*Dunlap v. Convening*

Authority, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974)] problem will be present, without, however, any apparent means available to substitute counsel. Similar difficulty may exist in connection with an individually selected military counsel. In these situations, *Goode* may need revision.
.

7. The problem I have mentioned earlier in the text as regards transfer of trial defense counsel from the jurisdiction of the court-martial authority also arises when the record of trial must be transferred to a different court-martial authority because the convening authority is disqualified to act on the case.

Here, newly-appointed counsel has certified that he "had no personal communication" with the accused, and that, other than being asked to act as accused's counsel by the Chief of Military Justice at Fort Riley, to the best of his knowledge he had "never [been] detailed by any convening authority as counsel" for the accused. These admissions are undisputed.

Appointment alone does not establish an attorney-client relationship. *United States v. Brady, supra; United States v. Miller,* 7 U.S.C.M.A. 23, 21 C.M.R. 149 (1956). For proper reason, the accused has a right to reject appointed counsel. *United States v. Kinard,* 21 U.S.C.M.A. 300, 45 C.M.R. 74 (1972); *United States v. Goodson,* 1 U.S.C.M.A. 298, 300, 3 C.M.R. 32, 34 (1952). Also, when entitled to counsel at a particular stage of the proceeding, the accused has the right to the choices allowed by Article 38, UCMJ. *United States v. Silas, supra; United States v. Andrews, supra; United States v. Donati,* 14 U.S.C.M.A. 235, 34 C.M.R. 15 (1963). This is not to say that the right to reject or the right to exercise a statutory choice may not be waived, explicitly or impliedly. For example, should an accused absent himself without authority when the court-martial proceedings are in progress and, during his absence, "good cause" requires that an established attorney-client relationship between accused and a military lawyer be terminated, I have no doubt that another military counsel can be appointed defense counsel and that he can properly act for the accused, notwithstanding the accused has not had the opportunity to express his own desires or choices. *See United States v. Cook,* 20 U.S.C.M.A. 504, 43 C.M.R. 344 (1971). However, this record discloses no circumstance justifying an inference of waiver of these rights by conduct and intention.

At all times important to the issue the accused was under military control. While he was in a command different from that of the court-martial authority to which the case had been referred for review, the distance was not great; the commander was at Fort Riley, Kansas, while the accused was either at Fort Carson, Colorado, the Disciplinary Barracks at Fort Leavenworth, Kansas, or perhaps even at Fort Riley because he was interviewed for clemency by the staff judge advocate of that installation. The person who acted as defense counsel indicates he may not have been appointed as defense counsel by competent authority; and the record contains no evidence of an official appointment. Arguably, the trial defense counsel was still the attorney of record. *See United States v. Coleman,* 19 U.S.C.M.A. 524, 42 C.M.R. 126 (1970). Nevertheless, assuming the putative lawyer had been properly detailed as defense counsel, he never communicated with the accused to determine whether the accused wished to be represented by him or to exercise any of the options allowed by Article 38(b).[8] Nothing in the record evidences any attempt on the part of the command to inform the accused of the substitution of defense counsel, although he was, as noted earlier, interviewed on clemency matters. Although I am certain the command had no intention of doing the accused an injustice, the record discloses a "callous disregard for the nature of the attorney-client relationship." *United States v. Gaines,* 20 U.S.C.M.A. 557, 562, 43 C.M.R. 397, 402 (1971).

Before the Court of Military Review, the accused disavowed the right of substitute counsel to act for him. I am satisfied that the disavowal came at the first opportunity available to the accused and was, therefore, timely. *See United States v. Massey, supra* at 489–90, 34 C.M.R. at 269–70. I conclude, therefore, that the accused was deprived of his right to reject appointed counsel and to exercise the choices allowed by Article 38(b) for the remainder of the post-conviction proceedings at the command level.

For the reasons noted, I join in reversal of the decision of the Court of Military Review and in return of the record of trial to the Judge Advocate General for submission to a competent court-martial authority for further proceedings.

---

**8.** The Court of Military Review acknowledged the absence of communication between the putative defense counsel and the accused, but "presume[d] regularity" of counsel's appointment.