UNITED STATES, Appellee,

v.

Specialist Four Glenn D. JOHNSON, SSN 505–70–2336, United States Army, Appellant.

CM 433394.

U. S. Army Court of Military Review.

12 Dec. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Demmon F. Canner, JAGC, and Captain Maurice D. Healy, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Major Michael B. Kennett, JAGC, Major Robert B. Williams, JAGC, and Captain Dennis S. Cameron, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

JONES, Senior Judge:

This case is again before this Court for review. The appellant initially was tried and convicted in March 1975 at Fort Riley, Kansas of assault with intent to commit robbery.[1] This Court affirmed.[2] The Court of Military Appeals reversed, set aside the action of the convening authority and authorized a new review and action by a dif-

1. A violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Approved sentence: Bad-conduct discharge, forfeiture of all pay and allowances, reduction to Private E–1, and confinement at hard labor for ten months.

2. No. 433394 (A.C.M.R. 9 July 1976).

ferent staff judge advocate and convening authority.[3]

The new review was prepared in December 1977 by the staff judge advocate at Fort Leonard Wood, Missouri, the installation to which appellant had been assigned upon completion of service of his period of confinement. A new defense counsel from Fort Leonard Wood was appointed to represent appellant in this proceeding. The original trial defense counsel was then (and remains) a member of the Defense Appellate Division, an organization collocated with this Court. There is no record that trial defense counsel ever requested permission of the appellant or either the Court of Military Appeals or this Court to be relieved of the duty of further representation. The newly designated defense counsel at Fort Leonard Wood accepted service of the review and submitted a rebuttal.[4]

Among the errors raised on this second round of appeals is an allegation that the Government improperly severed the attorney-client relationship by appointing a new defense counsel at Fort Leonard Wood for the post-trial review stage. The appellant cites *United States v. Iverson*, 5 M.J. 440 (C.M.A.1978), *United States v. Davis*, 5 M.J. 451 (C.M.A.1978), and *United States v. Brown*, 5 M.J. 454 (C.M.A.1978), in support of his position. The instant case is distinguishable from those cases on several grounds. Those cases dealt with appointment or substitution of counsel immediately after trial; this case deals with such appointment more than two and one-half years later. Those cases involved a failure of the new counsel to establish an attorney-client relationship; this case involves an established relationship. Those cases dealt with proceedings prior to the time the accuseds were appointed new counsel by operation of law; this case deals with the appointment of a new counsel after appellant has had five counsel represent him on appeal. Under the circumstances, we would

have no hesitancy in finding no merit in appellant's contention.

Confronting us in this case, however, is a series of summary dispositions of cases that extended the *Iverson, Davis* and *Brown* rules from the immediate post-trial, pre-appeal stage where no attorney-client relationship was established to the years-later, post-appellate review stage, where a new attorney-client relationship was established or where accused's absence prevented such relationship. *See United States v. Curtis*, 6 M.J. 48 (C.M.A.1978) (Summary disposition); *United States v. Barnes*, 6 M.J. 50 (C.M.A.1978) (Summary disposition); *United States v. Campbell*, 6 M.J. 51 (C.M.A. 1978) (Summary disposition); *United States v. Wallace*, 6 M.J. 58 (C.M.A.1978) (Summary disposition). The instant case falls squarely within the parameters of those summary orders. Therefore, we see no alternative to setting aside the action of the convening authority and returning the record of trial to The Judge Advocate General so that the original trial defense counsel may have the opportunity to submit a rebuttal or comment as counsel for the accused. Whatever special insight the original trial defense counsel has retained these many years, he will now have the opportunity to express it.

As this extension of the *Iverson, Davis,* and *Brown* rules was made without issuance of a formal opinion setting forth the rationale for such a step and as we view that extension unwarranted, we respectfully request the United States Court of Military Appeals to reconsider this issue. We offer these comments for such reconsideration.

Initially the Court of Military Appeals was concerned, and properly so, with the severance of the attorney-client relationship just prior to trial. *United States v. Murray*, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970); *United States v. Tellier*, 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962). From that base, it

---

**3.** 4 M.J. 8 (C.M.A.1978).

**4.** The new defense counsel initially had difficulty locating the appellant but he received a de-

lay, talked with appellant, and submitted a rebuttal on his behalf. From this we conclude that an attorney-client relationship was established.

logically extended such concern to the severance of the relationship immediately after trial. *United States v. Iverson, supra.* Next, however, it extended *Iverson* so that defense counsel apparently must continue to act as counsel for an accused as long as he remains alive and in the armed forces. It is difficult to visualize a "truly extraordinary circumstance" that would make continuation of the established attorney-client relationship "virtually impossible." *United States v. Iverson, supra; United States v. Brown, supra.*[5]

Judge Cook in his concurring opinion in *Iverson* and in his concurring and dissenting opinions in the trailer cases set forth very ably his views on the law in this area. Those views were rejected. See, for example, *United States v. Curtis, supra; United States v. Wallace, supra.* We have no illusion of being able to add persuasive argument that would cause the Court of Military Appeals to reverse itself and adopt Judge Cook's views. Notwithstanding that, we believe this Court has a duty when it believes the law to have reached an untenable position to offer its comments and request a change.

First, neither the Uniform Code of Military Justice, the Manual for Courts-Martial, United States, 1969 (Revised edition), nor the American Bar Association Minimum

Standards for Criminal Justice require continuation of the attorney-client relationship with trial defense counsel beyond the trial and convening authority review and action stage. The Congress of the United States, recognizing the difficulty that would be encountered if military trial defense counsel were required to continue as counsel on appeal, provided for separate attorneys to handle cases at the appellate level. Article 70, Uniform Code of Military Justice, 10 U.S.C. § 870. The Court of Military Appeals found no impediment to this procedure. *United States v. Patterson*, 22 U.S.C.M.A. 157, 46 C.M.R. 157 (1973). Similarly, that Court found no requirement that an appellate defense counsel must act as counsel in any subsequent proceedings at the trial level. *United States v. Kelker*, 4 M.J. 323 (C.M.A.1978).[6] Thus, in the military system, because of personnel requirements and uncertainties, the appointment of different counsel for different phases of criminal proceedings is provided.

In the civilian field, the American Bar Association Minimum Standards for Criminal Justice offer guidance. The Standards relating to the representation of an accused beyond the trial stage favor as a matter of policy the continued representation by trial defense counsel.[7] The language used is permissive, however, and not mandatory. No-

---

5. The requirement for continuation of the relationship between an accused and his military counsel is contrasted with that of retained civilian counsel which to some extent is governed by the terms of the employment contract. From experience, it appears that one of the reasons for termination of the attorney-client relationship with civilian counsel has been the inability of an accused to pay for the work. This hardly reaches the level of a "truly extraordinary circumstance."

6. The Court did not preclude counsel from serving if the accused requested and the appropriate commander determined counsel was available.

7. THE DEFENSE FUNCTION
8.3 Counsel on appeal.
   (a) Trial counsel whether retained or appointed by the court, should conduct the appeal if the defendant elects to avail himself of that right unless new counsel is substituted by the defendant or the appropriate court.

PROVIDING DEFENSE SERVICES
5.2 Duration of representation.
   Counsel should be provided at every stage of the proceedings, including sentencing, appeal, and post-conviction review. Counsel initially appointed should continue to represent the defendant through all stages of the proceedings unless a new appointment is made because geographical considerations or other factors make it necessary.
CRIMINAL APPEALS
2.2 Trial counsel's duties with regard to appeal.
   (a) Trial counsel, whether retained or court-appointed, should continue to represent a convicted defendant to advise on whether to take an appeal and, if the appeal is sought, through the appeal unless new counsel is substituted or unless the appellate court permits counsel to withdraw in the interests of justice or for other sufficient cause.

where is there an absolute requirement that trial defense counsel continues to represent an accused until that continued representation is virtually impossible.

The Standards also provide implicitly for the termination of the attorney-client relationship. By stating that a trial defense counsel should continue to represent an accused unless a new counsel is substituted or appointed or until an appeal is perfected, the Standards are saying that the trial defense counsel does not continue such representation after the substitution or new appointment or after the appeal is perfected. In effect, the new appointment or substitution terminates the attorney-client relationship. The same is contemplated in the military. When appellate counsel is appointed, trial defense counsel's relationship should be terminated. Any further relationship with the accused must come from a new appointment, not from a resurrection of the original appointment.

Another significant factor is the absence in the Standards of any indication that the trial defense counsel should continue to represent an accused beyond the appellate stage. No mention is made, for example, of representation at a new trial. The Standards, in speaking of post conviction proceedings (which could be before or after appeals), provide for the appointment of counsel.[8] They do not speak in terms of representation by the original trial defense counsel.

The Standards provide for withdrawal of counsel from a case, but those provisions relate to grounds such as illness, conflict of interest, client's conduct, and frivolous nature of an appeal.[9] The standards do not require counsel to file a withdrawal motion when another counsel is appointed because, in our opinion, the drafters believed the original attorney-client relationship was terminated automatically with the appointment of new counsel upon appeal. The formal withdrawal required by *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977), is unnecessary. The military should follow the Standards and require no formal with-

8. POST–CONVICTION REMEDIES
    4.4 Appointment of counsel; withdrawal of appointed counsel.
    (a) It is most desirable to avoid processing of applications for post-conviction relief beyond the initial screening of the documents without counsel representing the applicant. Counsel should be provided for pro se applicants unable to afford adequate representation. When private counsel are appointed to represent such applicants, their services should be compensated adequately from public funds.
    (b) The responsibility of appointed counsel to continue to serve their clients through any appellate proceedings, including review by the Supreme Court of the United States, should be affirmed. Even if appointed counsel is not expected to continue in a case beyond the level of the court appointing him, he should be responsible at a minimum to continue in the case, if the applicant wishes to proceed further, until an appeal is perfected or the necessary preliminary steps have been taken to bring the case before the reviewing court.
PROVIDING DEFENSE SERVICES
    4.2 Collateral proceedings.
    Counsel should be provided in all proceedings arising from the initiation of a criminal action against the accused, including extradition, mental competency, post-conviction and other proceedings which are adversary in nature, regardless of the designation of the court in which they occur or classification of the proceedings as civil in nature.

9. PROVIDING DEFENSE SERVICES
    5.3 *Withdrawal of counsel.*
    Once appointed, counsel should not request leave to withdraw unless compelled to do so because of serious illness or other incapacity to render competent representation in the case, or unless contemporaneous or announced future conduct of the accused is such as to seriously compromise the lawyer's professional integrity. If leave to withdraw is granted, or if the defendant for substantial grounds asks that counsel be replaced, successor counsel should be appointed. Counsel should not seek to withdraw because he believes that the contentions of his client lack merit, but should present for consideration such points as the client desires to be raised provided he can do so without compromising professional standards.
THE DEFENSE FUNCTION
    8.3 Counsel on appeal
    (b) Appellate counsel should not seek to withdraw from a case solely on the basis of his own determination that the appeal lacks merit.

drawal when different counsel is appointed for appeal.[10]

The purpose of *Palenius*, to provide continuous defense representation, can be met completely without the necessity of a withdrawal motion.[11] A strict application of *Palenius* can lead to the situation where counsel who was formally relieved is not required to serve further as counsel to an accused in a new review and action even though all parties are at the same installation while in another case, a counsel thousands of miles away would be required to serve solely because he did not file a formal withdrawal motion.

Second, the advantage flowing from the continuity of representation by counsel beyond the trial phase is usually lost for a proceeding that occurs years after the trial. The reason for the policy favoring continued representation is, as stated by the ABA Standards, "the efficient functioning of the appellate process . . ." which comes from such counsel's "intimate familiarity with the issues and the trial proceedings."[12] When that familiarity is lost with the passage of time, the reason for the rule fails and nothing is to be gained by requiring the same counsel to serve. Any benefit to an accused in having his original trial counsel served with a new staff judge advocate review years after the trial has long since been lost.

Third, the requirement to continue the attorney-client relationship, for an indefinite period after the trial is too disruptive of personnel management and too burdensome upon the armed forces. Military forces and court-martial jurisdictions are spread throughout the world. Reassignments of personnel and movements of units are necessary for the services to remain an effective fighting force and to perform their missions. Such reassignments and movements are characterized as routine, yet they are necessary for effective and effi-

cient operations. To require the services to maintain control over trial defense counsel for years after trial so that they will be available instantly to resume an attorney-client relationship is not only unrealistic but unduly burdensome. *Palenius* made the attorney-client relationship sacred; *Iverson* and its trailer cases now make it eternal.

The action of the convening authority dated 7 February 1978 is set aside. The record of trial is returned to The Judge Advocate General for a new review and action by the same or a different convening authority.

Judges DeFORD and LEWIS concur.

---

**10.** See Judge Cook's opinion, concurring in the result in *United States v. Iverson*, 5 M.J. at 447.

**11.** The gap in representation discussed in *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977), is not limited to military proceedings. It is

present in the civilian court system also. See the commentary to Standard 8.3(a), THE DEFENSE FUNCTION.

**12.** Commentary to Standard 8.3(a), THE DEFENSE FUNCTION.