**UNITED STATES**

v.

**Harry Edwin MEEK, Jr., 458 21 9399, Seaman (E–3), U. S. Navy.**

**NCM 78 1573.**

U. S. Navy Court of Military Review.

Sentence Adjudged 24 May 1978.

Decided 27 July 1979.

LT Vance J. Bettis, JAGC, USNR, Appellate Defense Counsel.

MAJ D. A. Higley, USMC, Appellate Government Counsel.

Before BAUM, MICHEL and GRANGER, JJ.

MICHEL, Judge:

Appellant was found guilty by a special court-martial composed of officer members of an unauthorized absence of a duration in excess of 7 months in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. On the concluding day of trial, 24 May 1978, he was sentenced to reduction to pay grade E–1, to be confined at hard labor for 3 months, and to be discharged from the Naval service with a bad-conduct discharge. The findings and sentence reach this Court unaltered by the reviewing authorities below.

It is urged by appellate defense counsel that the supervisory authority's action be set aside and a new staff judge advocate's review and supervisory authority's action be prepared because the Government failed to serve a copy of the staff judge advocate's review upon "counsel for the accused" in accordance with the mandate of *United States v. Goode*, 1 M.J. 3 (C.M.A.1975). Appellate Government counsel concedes error; however, we are not so conciliatory, being of the opinion that the facts of this case far from warrant such a conclusion. At the outset a brief chronology is in order to place these facts in proper perspective.

Appellant was arraigned on 24 April 1978. At those proceedings the military judge [1] properly informed appellant of his rights respecting counsel and forum, and appellant indicated his understanding of these matters. The military judge then allowed appellant to reserve his right to elect both counsel [2] and forum, and, after granting a defense motion for a continuance of almost 1 month, specifically advised appellant of the procedures attendant with trials conducted where the accused has chosen to voluntarily absent himself from the proceedings. Appellant answered unequivocally that he understood this advice.

On the appointed date trial was held, but appellant was not in attendance. Trial counsel succeeded in proving that appellant's then present absence was both unauthorized and voluntary; preliminary motions, the nature of which are not important here, were disposed of; the military judge entered pleas of not guilty for appellant; the court was assembled and a panel of three officer court members selected; [3] and

1. Subsequent to the conclusion of this initial Article 39(a), UCMJ, 10 U.S.C.A. § 839(a), session, a new military judge, detailed by the convening authority due to the illness of the original trial judge, presided over the remainder of the proceedings. In that the court had not been assembled prior to this appointment, we need not pause to consider whether the illness of the military judge originally acting in the case provided the proper impetus for a substitute judicial officer to proceed with the resumption of trial on the precise date established by his predecessor when granting a defense motion for a continuance until 22 May 1978. *See* paragraph 39e, MCM, 1969 (Rev.).

2. Appellant only reserved to elect whether or not he desired the services of a civilian attorney and clearly indicated that he wanted to be defended by LCDR U, JAGC, USN, and did not desire representation by individual military counsel of his own selection. LCDR U continued to represent appellant throughout the remainder of trial.

3. In that appellant did not submit a written request that the court membership include enlisted persons from a unit other than his own, the court membership was proper. *See* Article 25(c)(1), UCMJ, 10 U.S.C.A. § 825(c)(1). While it might be argued that appellant, by reserving his right to forum precluded trial solely by

trial through sentencing ensued, all in the absence of appellant.

Trial defense counsel, on 5 September 1978, submitted a letter to the supervisory authority wherein he requested relief from his defense duties in appellant's case due to his impending transfer on 7 September 1978, pursuant to permanent change of duty station orders effecting his relocation from Naval Air Station, Corpus Christi, Texas, the situs of trial, to the Construction Battalion Center, Port Hueneme, California.[4] Ostensibly in accordance with this request, the supervisory authority, on 7 September 1978, orally appointed LT S, JAGC, USNR, as appellant's "successor defense counsel," such being confirmed in writing on 12 September 1978 by the supervisory authority by his letter of even date.[5] From the record before us, we discern that a copy of the staff judge advocate's review was served upon LT S on 29 September 1978, and that no defense comments on that review were forthcoming as of 5 October 1978. The supervisory authority, confirming the approval of the convening authority's action of 29 August 1978, on the findings and sentence, took his respective action on 6 October 1978. On 31 October 1978 the Officer in Charge, Navy Appellate Review Activity, tasked the Directors of the Appellate Defense and Appellate Government Divisions with the responsibility of designating appellate counsel to represent appellant and the government in that the record of trial did not contain a signed statement of appellant which indicated his desire as to appellate representation. Thereafter, presumably at the instigation of appellate defense counsel, LT S, on 21 November 1978, executed an affidavit whereby it was revealed that appellant was neither at the command

nor available for consultation on 12 September 1978, the date of the written confirmation of the oral "successor defense counsel" appointment, and to that officer's knowledge appellant was not present at the situs of trial at any time prior to the supervisory authority's action being taken in the case. Further, LT S averred that that officer has never had any contact with appellant and that no attorney-client relationship was ever formed. The affidavit concluded by indicating that LT S had read the record of trial and the staff judge advocate's review in appellant's case.

The thrust of the contention of appellant's legal champion here is that there was never served upon "counsel for the accused" a copy of the staff judge advocate's review. This proffered conclusion is premised on the intertwined assertions that there is no evidence from which to conclude that (1) LCDR U was ever served with a copy of that review, or (2) appellant never consented to the relief of LCDR U as his defense counsel, or (3) appellant neither knew about nor consented to LT S's appointment as his "successor defense counsel," thereby precluding the formation of an attorney-client relationship with LT S, the only counsel upon whom service of the staff judge advocate's review was made. Appellate defense counsel bottoms his position on *United States v. Iverson*, 5 M.J. 440 (C.M.A.1978), and it is to the mandate of that case that appellate Government counsel essentially acceded.

In *Iverson*, a case giving rise to three separate opinions by members of our military High Court, appellant had his petition for review granted to determine whether he had been prejudiced by the Government's failure to serve a copy of the staff judge

---

officer members, we believe that by his voluntary unauthorized absence appellant waived any such right of selection. *See* paragraph 61*h*, MCM, 1969 (Rev.).

4. This request was predicated upon trial defense counsel's understanding of the requirements embodied in *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977) and JAGMAN § 0121b.

5. Appellate defense counsel correctly notes that the record of trial and associated documents contain no indication that LCDR U was *in fact* relieved by the supervisory authority of his responsibilities attendant to appellant's case. While such specific indication of relief would have been the better practice, we, as appellate defense counsel, assume, without deciding, that the appointment of LT S operated to divest LCDR U of all further duties as appellant's defense counsel.

advocate's review upon counsel who represented appellant in the trial court. Due to Iverson's post-trial removal from the situs of trial (which was also the location of trial defense counsel's permanent duty station), for confinement purposes, a copy of the review was delivered to another attorney co-located with the surrogate convening authority.[6] This officer reviewed the record of trial and the staff judge advocate's review and thereafter indicated to the new convening authority that there was nothing which he wished to submit in explanation or rebuttal.[7] As a point of departure the lead opinion in *Iverson* posits that the rule announced in *United States v. Goode* was promulgated "to eliminate delays encountered in claims of error in post-trial reviews and the exhaustion of appellate resources when such errors could easily and expeditiously be resolved prior to the convening and supervisory authorities' actions."[8] Apparently in an effort to resolve a split of authority among various members of the Army Court of Military Review,[9] the author jurist opted to conclude that the better rule of law would require that "the attorney-client relationship must exist for anyone to function as 'counsel for the accused'" in order that the *Goode* mandate be lawfully satisfied.[10]

As pertains to the present controversy, appellate defense counsel, by direct reference, and appellate Government counsel, by implication, appear convinced that the Court in *Iverson* was formulating a *per se* rule. If our perception of their respective views is correct, we feel constrained to indicate that their conclusion rests on a misreading of that case. Our reading discloses that all three of our judicial superiors recognized the possibility that certain circumstances could preclude an application of the otherwise all-pervasive *Iverson* rule.[11] We find such circumstances to exist in the litigation now before us.

It is beyond cavil that a military accused has certain fundamental rights, with respect to the criminal proceedings lodged against him, which require near absolute deference. So too, it has been judicially and otherwise recognized that, given the lawfully sufficient predicate, any accused by affirmative personal action, may effectively divest himself or herself of those protections which these rights were intended to promote. Thus, it is that any accused, subsequent to being fully informed and signifying an understanding of the material considerations inherent in the substance of a wide panoply of such protections, may lawfully take such steps so as to expressly divest himself or herself of these same safeguards. In this vein, waivers have been sanctioned in appropriate cases regarding the right to silence,[12] to an attorney,[13] to

---

**6.** The original convening authority and his staff judge advocate were disqualified from conducting the post-trial review and action. *See* 5 M.J. at 441.

**7.** With the exception of not being specifically informed by any convening authority that he had been detailed to act as Iverson's counsel, this attorney stood in much the same position as LT S. While the former resolved the problem of representation in a manner different than LT S, it can be imagined that much the same consideration was given to professional and ethical standards. *See* 5 M.J. at 441 n. 2.

**8.** 5 M.J. at 441 *quoting United States v. Hill*, 3 M.J. 295, 296 (C.M.A.1977).

**9.** *Compare United States v. Iverson*, 2 M.J. 489 (A.C.M.R.1975) *with United States v. Miller*, 2 M.J. 767 (A.C.M.R.1976).

**10.** 5 M.J. at 441–442. While one other member of the court unquestionably adhered to this

position, *see id.* at 444–445 (Fletcher, C. J., concurring), unanimity is clearly absent. *See id.* at 449 (Cook, J., concurring in the result).

**11.** *See* 5 M.J. at 442–443; *id.* at 444–445 (Fletcher, C. J., concurring); *id.* at 449–450 (Cook, J., concurring in the result). Even assuming the requirement for the application of a *per se* rule, in that appellant's "successor defense counsel" was appointed prior to the time *Iverson* was decided, we would not, of our own volition, choose to give the rule therein articulated retroactive applicability.

**12.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**13.** *See Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (during trial); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967) (during custodial interrogation); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (during a

confrontation and cross-examination of adverse witnesses,[14] to a trial of the facts,[15] to resolution of findings or sentence by court-martial members,[16] and to interpose the bar of the statute of limitations.[17] We perceive an analogous situation in the case at bar.

Appellant, it is to be remembered, voluntarily absented himself from his court-martial after specifically being informed by the military judge of the consequences attendant with his failure to appear and his specific acknowledgment of his understanding of these possible consequences. Whether we view appellant's continuing unauthorized absence, coupled with the routine administrative reassignment of his trial defense counsel, as being equivalent to a "truly extraordinary circumstance"[18] giving rise to the proper termination of the original attorney-client relationship by the convening authority, or, considered alone, as a valid waiver by the appellant of any right he might otherwise have had to effectuate his options with respect to that individual by whom he desired continuing legal representation,[19] is of no consequence. Suffice it to say that by his own volitional act appellant has forfeited his right to assert that he has standing to complain of the alleged infringement of a supposed fundamental right to have a copy of the staff judge advocate's review served upon "his counsel." While we readily acknowledge the existence of such a right, concomitantly we recognize that the rule embodying the right

has its genesis in neither the Constitution nor federal statute, being rather a creature of "judicial convenience."[20] Here, the supervisory authority acted in good faith to effectuate compliance with that rule. In so doing, he evidenced a greater regard for appellant's rights than did appellant. Under the circumstances, we decline to say that the supervisory authority erred to appellant's prejudice.[21]

The remaining assignment of error lacks merit.

Accordingly, the findings and sentence, as approved below, are affirmed.

Senior Judge BAUM concurs.

GRANGER, Judge (concurring):

The facts in this case are distinguishable from those set forth in the dissenting opinion in *United States v. Barnes*, 6 M.J. 50, 51 (C.M.A.1978). In that case, as in this one, the record was returned for new staff judge advocate review and convening authority action. Trial defense counsel had been routinely reassigned, and a new defense counsel was appointed who reviewed the staff judge advocate review and responded on behalf of the accused. The accused was an unauthorized absentee at the time his new counsel was appointed. The Court of Military Appeals held that the mandate of *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975) had not been followed, finding that

"critical stage" of the criminal proceedings); *Swenson v. Bosler*, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967) (during appellate proceedings).

14. See *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912).

15. See *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

16. See Article 16, UCMJ, 10 U.S.C. § 816; paragraph 53d(2), MCM, 1969 (Rev.).

17. See paragraph 68c, MCM, 1969 (Rev.).

18. See *United States v. Iverson*, supra at 442–443; id. at 444–445 (Fletcher, C. J., concurring); but see id. at 445–446 (Cook, J., concurring in the result).

19. Compare id. at 443 with id. at 450 (Cook, J., concurring in the result).

20. See id. at 447 (Cook, J., concurring in the result). We would go on record as concurring in the implied suggestion that *Goode, supra*, be reexamined. See id. at 449 n. 6 (Cook, J., concurring in the result).

21. In so concluding, we find that the action taken by the supervisory authority in appointing LT S as counsel for appellant was neither for administrative convenience, cf., *United States v. Tellier*, 13 U.S.C.M.A. 323, 32 C.M.R. 323 (1962), nor otherwise in any manner arbitrary, cf., *United States v. Murray*, 20 U.S.C. M.A. 61, 42 C.M.R. 253 (1970), nor undertaken to dislodge a logistical or financial burden. Cf., *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972).

the original counsel was not "actually unavailable" and that the substitute counsel "effectively interfered with the established attorney-client relationship between the appellant and his trial defense counsel without 'good cause.'"

In the case at bar, there was no attorney-client relationship to interfere with, that relationship having been properly severed by the convening authority upon application of the original trial defense counsel. Had appellant been present, he could have contested his defense counsel's relief. By his unauthorized absence, he waived any objection in this regard. Having been relieved, that counsel was "unavailable" to represent appellant in further proceedings.

Another point raised by appellate defense counsel is that no attorney-client relationship exists between appellant and the substituted trial defense counsel, for which reason the latter cannot be heard to represent the former. The Higher Court has used this same rationale to reverse lower court decisions. *See e. g., United States v. Kindlon*, 6 M.J. 52 (C.M.A.1978); *United States v. Brown*, 5 M.J. 454 (C.M.A.1978); *United States v. Iverson*, 5 M.J. 440 (C.M.A.1978). That rule can hardly apply to the situation where the client has relinquished his voice in the matter by becoming an unauthorized absentee. If the rule were universally applied, and no attorney could represent a client with whom he had not formed an attorney-client relationship through agreement with the client, then idiots, minors and insane persons could never be represented. Indeed, we would be forced to strike appellate defense counsel's pleadings in this case, because he would be nothing more than an interloper, inasmuch as appellant has never requested *any* appellate representation, let alone made a request for, or formed an attorney-client relationship with, the appointed appellate defense counsel. If personal contact were an absolute requisite to legal representation, an accused could effectively bring court-martial proceedings to a standstill by absenting himself—the tail wagging the dog, in more than one sense.

I conclude that appellant has waived the right to object to the relief of his original trial defense counsel or the appointment of his substitute trial defense counsel.