UNITED STATES, Appellee,

v.

Robert M. ANNIS, Jr., Specialist Five U. S. Army, Appellant.

No. 33,868.

CM 434365.

U. S. Court of Military Appeals.

Sept. 18, 1978.

For appellant—*Captain John H. Milne* (argued); *Mr. Donald A. Timm,* Esquire (on brief); *Colonel Robert B. Clarke* (on petition); *Lieutenant Colonel John R. Thornock* (on brief); *Captain D. David Hostler* (on brief); *Captain Ronald F. Larson* (on brief); *Captain Preston Wilson* (on petition).

For appellee—*Captain Glen D. Lause* (argued); *Colonel Thomas H. Davis* (on brief); *Lieutenant Colonel R. R. Boller* (on brief); *Major John T. Sherwood, Jr.* (on petition); *Major Steven M. Werner* (on brief); *Captain William C. Kirk.*

Opinion

FLETCHER, Chief Judge:

Specialist Five Robert M. Annis, Jr., was convicted by a general court-martial of larceny; his sentence[1] brings this matter properly before us, warranting consideration under the provisions of Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867.

By his sergeant's direction, the appellant—who was the mess hall ration clerk—was assigned a truck and driver in order to be issued a case of steaks and twenty pounds of pot roast. Sometime during the course of loading, unrequisitioned quantities of meat were placed on the truck. Subsequently this was perceived by a gate guard who halted the truck and confirmed his suspicions upon unloading it.

The crowd of people surrounding the unloading of the truck located in the meat issue compound attracted the attention of a Major Gross, executive officer of the Second Supply and Transfer Battalion, who—approaching—was told that someone was overdrawing meat. His description of these events, in answer to questions at trial, follows:

A. . . . At that time the Sergeant Major started to ask the individual where the meat came from, at that time I stopped Sergeant Major, read the individual his rights and then—

Q. You read him his rights?

A. Off of a card, yes, sir.

Q. Where did you get the card?

A. I always have a card in my wallet.

Q. Then what happened, sir?

A. After I read him the rights, we questioned where he got the extra meat.

Q. What did he tell you?

A. Basically, he was saying, I don't know where it came from. We continued questioning him, finding out where it came from, he just said, I don't know where it came from, this is what they gave me, this is what I've ordered, this is what I loaded, I loaded exactly what they gave me, or words to that effect.

■ As the questioning of the accused did not take place in a custodial setting, we do not apply the standard of *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), incorporating *Miranda v. Arizona,* 384 U.S. 486, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the procedural safeguards of Article 31, UCMJ, remain. As is shown by the foregoing testimony of Major Gross, an advisement of rights was given the appellant before questioning about the unrequisitioned meat. Although the particular warning information conveyed by the official questioner is not made explicit on the record, in the absence of a contrary showing or of defense challenge I will here presume regularity of exposition of Article 31 warnings. Additionally, the record of trial demonstrates that the appellant had, at the very least, constructive notice of the nature of the accusation, thereby allowing him an intelligent weighing of consequences in responding to an investigator's question. *United States v. Reynolds,* 16 U.S.C.M.A. 403, 405, 37 C.M.R. 23, 25 (1966).

---

1. The appellant was found guilty of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. He was sentenced to a dishonorable discharge, confinement at hard labor for two years, forfeiture of $180 pay per month for two years, and reduction to the lowest pay grade. The convening authority approved the sentence, but suspended for one year the confinement in excess of one year. Findings and sentence were affirmed by the Court of Military Review.

I, thus, see no judicial error in the admission of these oral extra-judicial admissions.

■ Turning briefly to the granted issue regarding effective assistance of counsel, we observe that this right is extended to the military accused both by the Sixth Amendment to the Constitution and the Uniform Code of Military Justice. From the earliest terms of this Court we have sustained the right of assistance of counsel prior to and during trial on criminal charges. *United States v. Gunnels*, 8 U.S.C. M.A. 130, 23 C.M.R. 354 (1957); *United States v. Clay*, 1 U.S.C.M.A. 74, 1 C.M.R. 74 (1951). *See United States v. Tempia, supra.*

In the case *sub judice* the appellant was represented before and during his court-martial by an appointed defense counsel, Captain Forbes; this trial resulted in the findings of guilty and sentence on October 16, 1975. Appellate processing commenced immediately thereafter. On December 12, 1975, Captain Forbes advised the appellant of his appellate rights and subsequently was transferred to a new duty station prior to completion of the Staff Judge Advocate's review. Upon its completion, contact with Forbes was attempted in an effort to serve the review; his unavailability due to a period of leave associated with change of duty prompted the Staff Judge Advocate to appoint Captain Lantz to succeed him in representing the appellant. After his designation, Captain Lantz, in discussion with his client, was informed that appellant was seeking civilian counsel to petition for clemency. A civilian attorney was retained and thereafter both she and Captain Lantz were served with the review. Extra time for preparation of the clemency petition having been granted, the civilian defense counsel submitted both a response on behalf of her client to the Staff Judge Advocate's review and a clemency petition to the convening authority.

The rule in *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), was promulgated to insure the accuracy of the Staff Judge Advocate's review in light of the record of trial. The process mandated in that case provides a determination of review validity and a corrective process with minimal delay. It was anticipated, then, that the accused's interests would be properly preserved by his counsel's participation in the *Goode* procedure.

■ In this case, immediately following the appointment of substitute counsel, the appellant hired a civilian attorney who, on his behalf, specifically requested retention of Captain Lantz as appointed military defense counsel. This request for retention manifests appellant's satisfaction with the substitution of designated military defense counsel.[2] At no time was objection made to the departure of Captain Forbes. Subsequently the defense submitted both a clemency petition and a proper *Goode* response to the convening authority. These actions give rise to an affirmative consent to Captain Lantz's representation and any error in the severance of appellant's attorney-client relationship with Captain Forbes must, by this Court, be considered waived. In this instance we agree with the court below that the purposes of *Goode* are fulfilled and the appellant cannot rightly now be heard to complain.

The decision of the United States Army Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

I disagree with a number of aspects of the principal opinion. Suffice it to refer specifically to the statement that an inference as to the "regularity of exposition of Article 31 warnings" may properly be drawn from Major Gross' testimony. The witness made no reference whatever to the Article and I cannot see that what he said inexorably referred to Article 31.[1]

I concur in the determination that the situation confronting the accused was not that of a "custodial interrogation"; there-

---

2. *See generally* the discussion of post-trial activities of trial defense counsel in *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977).

1. Uniform Code of Military Justice, 10 U.S.C. § 831.

fore, the Government was not obligated to prove, affirmatively, as a condition to the admission of accused's pretrial remarks, that he had been preliminarily advised as to the right to remain silent and right to counsel's presence at the interrogation. *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). I concur, also, in the determination that accused's remarks were properly received into evidence, but do so on the ground that the accused did not object to them at trial, and no manifest miscarriage of justice would result to refuse to predicate reversal upon a claim of inadmissibility asserted for the first time in this Court. *United States v. Dial*, 9 U.S.C.M.A. 700, 26 C.M.R. 480 (1958). I concur, too, with the determination that the accused consented to the substitution of counsel for the post-conviction proceedings before the convening authority. For the reasons indicated, I join in affirmance of the decision of the Court of Military Review.

PERRY, Judge (concurring in the result):

Although I concur in the disposition of the case with the Chief Judge, I am moved to comment upon both aspects of his opinion, for I find myself not in complete agreement therewith.

While Chief Judge Fletcher acknowledges that nowhere in the record is it ap-

parent what rights advisement was given the appellant, he is willing to presume regularity in the absence of a contrary showing or of defense challenge. Judge Cook, in his opinion concurring in the result, is of similar thinking, concurring "on the ground that the accused did not object to them [the rights warnings] at trial . . ." However, I believe that an affirmative showing in the record that proper warnings under Article 31 [1] were given is a necessary *foundation* to the admissibility into evidence of any statement that followed. *See United States v. Dohle*, 1 M.J. 223 (C.M.A.1975); paragraph 140a (2) Manual for Courts-Martial, United States, 1969 (Revised edition). However, as the statement by the appellant was entirely exculpatory in nature, I conclude that no prejudice flowed from the evidentiary error of the judge.

As to the concern with the interruption of the attorney-client relationship between the appellant and Captain Forbes, his trial defense counsel, I am of the opinion that the appellant's post-trial retaining of the services of a civilian defense counsel on his own initiative operated to permit that counsel to act for the defense in fulfilling the *Goode* [2] responsibilities. In this light, neither Captain Lantz's activities nor any perceived "waiver" of further participation by Captain Forbes is at issue.

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.

2. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).