**UNITED STATES, Appellee,**

v.

**Private El Dana HARRIS, SSN 160–44–0618, United States Army, Appellant.**

**CM 437929.**

U. S. Army Court of Military Review.

28 Dec. 1979.

---

5. *United States v. Cummings, supra* note 3.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Major Lawrence D. Galehouse, JAGC, and Captain Donald J. Perrault, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Captain Stephen D. Smith, JAGC, and Captain Rexford T. Bragaw, III, JAGC, were on the pleadings for appellee.

Before MITCHELL, DRIBBEN and GARN, Appellate Military Judges.

OPINION OF THE COURT

PER CURIAM:

Appellant contends that his enlistment was void, that the military judge failed to

explain to him the terms of the plea agreement, and that the post-trial review was erroneously served on a substitute defense counsel. We do not agree and affirm.

Appellant pleaded guilty to aggravated assault, Article 128, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 928, and was sentenced by court members to a bad-conduct discharge, confinement at hard labor for six months and forfeiture of all pay and allowances for six months.

## I

On 31 March 1978, appellant received his enlistment physical. He informed Doctor Isajiw, a general practitioner, that except for some ear problems his health was good. After examining appellant and medical records which pertained to appellant's ear difficulties, Dr. Isajiw found no indication of an active ear infection and found appellant to be qualified for enlistment in the National Guard.

On 26 July 1978, while on active duty, appellant was treated for pneumonia and an ear problem was noted. On 8 August 1978, during a physical for release from active duty, the extent of appellant's ear problem was discovered and he was referred to an ear, nose and throat specialist who saw appellant on 28 August 1978. On 17 November 1978, after a number of visits and tests, the specialist diagnosed appellant's condition as otitis media,* an ear disease which constitutes a bar to enlistment under pertinent regulations. It was the opinion of the specialist that this condition existed at the time of appellant's enlistment. The offense of which appellant was convicted occurred on 4 September 1978.

■■ Appellant contends the court-martial lacked jurisdiction since his enlistment was void *ab initio* because of recruiter misconduct. We do not agree. The specialist testified that a general practitioner might not have been as aware of the ear problem as a specialist and that it was his opinion that Dr. Isajiw was guilty of poor judgment. The failure of Dr. Isajiw to correctly appraise appellant's medical condition does not constitute misconduct. At most, Dr. Isajiw was guilty of simple negligence which does not make appellant's enlistment void. *United States v. Valadez,* 5 M.J. 470 (C.M.A. 1978). Appellant's enlistment in violation of the regulation merely made his enlistment voidable. *United States v. Valadez, supra.*

■ Appellant contends that even if there was no misconduct in his enlistment, the trial court should nevertheless be held to have been without jurisdiction because the government failed to take affirmative steps to effectuate his discharge after learning of his disqualification. We do not agree. It was not until 28 August 1978, that the seriousness of the ear problem was discovered and steps were taken immediately to diagnose its nature and extent. A week later appellant committed the assault, which precluded any discharge.

## II

The plea agreement contained the following provisions:

I further understand that this agreement will be automatically cancelled upon the happening of any of the following events:

> \*       \*       \*       \*       \*       \*

c. The changing of my plea from guilty to not guilty by myself or on my behalf during the trial, *or after the trial in any rehearing directed by the convening or higher authority.* (Emphasis added.)

■■ In *United States v. Green,* 1 M.J. 453 (C.M.A. 1976), the court held that the military judge has the duty to secure from all parties to the trial their assurances that his interpretation of a pretrial agreement comports with their understanding of its meaning and effect. The military judge here did read the quoted provisions to appellant and asked him if he understood. Appellant responded that he did. Appellant now claims this inquiry was insufficient because the provision is misleading

---

* An accumulation of fluid in the middle ear causing a hearing loss.

with respect to his legal rights in the event of a rehearing. We are unable to agree. The quoted provisions are clear. It appears all the parties to the trial, as well as the convening authority and his staff judge advocate, understood the agreement to be that, should the appellant's plea of guilty be changed during any rehearing that might be directed, the pretrial agreement would be cancelled. We see no reason that the pretrial agreement should not be cancelled in that event, and perceive no reason the military judge should have explained to the appellant that, if a rehearing were ordered after the convening authority acted on his sentence, because of the provisions of Article 63(b), U.C.M.J., and paragraph 81*d*(1), Manual for Courts-Martial, United States, 1969 (Revised edition), the cancellation could only inure to the benefit of the appellant. *See United States v. Stoutmire*, 5 M.J. 724 (A.C.M.R. 1978). Furthermore, appellant has not been prejudiced even if he did not understand that the plea agreement could have been cancelled had he changed his plea during a rehearing ordered by the convening authority. No rehearing has been ordered. He has the benefit of his agreement, and his plea was provident.

### III

■ Appellant's detailed defense counsel was separated from the service prior to the serving of the post-trial review. A new defense counsel was appointed who entered into an attorney-client relationship with appellant and the post-trial review was served upon this substitute counsel. Appellant contends this was error since the government failed to contact his original defense counsel and ascertain whether he was available and willing to still act as appellant's counsel. We do not agree. The relationship between an accused and his defense counsel can only be terminated upon good cause. *United States v. Iverson*, 5 M.J. 440 (C.M.A. 1978). The departure of the defense counsel from the service constitutes good cause.

The findings of guilty and the sentence are affirmed.