UNITED STATES, Appellee,

v.

Private E–1 Rodney J. EDWARDS, SSN 439–88–8598, United States Army, Appellant.

SPCM 11250.

U. S. Army Court of Military Review.

8 Jan. 1982.

Captain Paul J. Moriarty, JAGC, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz,

Jr., JAGC, Major Charles A. Byler, JAGC, and Captain Robert L. Gallaway, JAGC.

Captain Michael F. Pfau, JAGC, argued the cause for appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Paul K. Cascio, JAGC.

Before JONES, GARN and HANFT, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

JONES, Senior Judge:

This case is before this Court for the fourth time. Two previous decisions were reversed, and the case was returned on another occasion for consideration of an issue specified by the United States Court of Military Appeals.[1] The six and one-half years since trial have been concerned almost exclusively with issues related to the post-trial review phase of the proceedings.[2] Not surprisingly the two errors assigned at this time are of a like nature.

### I

■ The appellant asserts that he was prejudiced on the latest (third) review and action because of the involuntary severance of the attorney-client relationship with his original defense counsel. We do not agree.

When the third review and action was directed in 1980 the original defense counsel was out of the service, having terminated his active duty more than a year previously. The substitute defense counsel who acted during the second review had been reassigned to another installation (Fort Devens, Massachusetts.) The convening authority (at Fort Hood), therefore, appointed a new defense counsel for appellant and directed

1. Chronology:
   12 March 1975 Convicted by Special Court-Martial, 8th Inf. Div. Willful disobedience NCO (Article 91, 10 U.S.C. § 891) Wrongful appropriation $20 (Article 121, 10 U.S.C. § 921) ·Assault and battery (Article 128, 10 U.S.C. § 928)
   8 April 1975 Convening authority approved sentence. (Initial review and action, 8th Inf. Div.). Bad-conduct discharge, confinement at hard labor for four months, forfeiture of $217 per month for four months.
   30 Sep 1975 Court of Military Review affirmed without opinion.
   25 June 1976 Court of Military Appeals reversed. New review and action required. (Unpublished order).
   12 Aug 1976 New (second) review and action, III Corps, Fort Hood
   4 Feb 1977 COMR affirmed without opinion.
   23 Aug 1977 COMA remanded to COMR to consider a specified issue and to make factual determination related thereto. 3 M.J. 385 (C.M.A.1977), Mem.
   27 Jan 1978 COMR affirmed. 4 M.J. 821 (A.C.M.R.1978).
   7 Jul 1980 COMA reversed. New review and action required. 9 M.J. 94 (C.M.A.1980).
   13 Nov 1980 New (third) review and action, Fort Hood.

2. This case was tried prior to the decision in United States v. Goode, 1 M.J. 3 (C.M.A.1975) and the procedure prescribed in that case did not apply to the initial (first) review and action. However, because the record of trial and the staff judge advocate's review were not furnished to the accused and his original counsel until after the convening authority took his action, the Court of Military Appeals in an unpublished summary order, citing United States v. Cruz-Rijos, 1 M.J. 429 (C.M.A.1976), decided the same day, reversed and ordered a second review and action.

The Court of Military Appeals set aside the second action of the convening authority and ordered a new (third) review and action because there was no showing that the appellant had knowingly and voluntarily consented to the termination of the services of his original defense counsel and because there were no extraordinary circumstances which prevented continuation of that attorney-client relationship. At the time of the second review and action in 1976, appellant's original defense counsel was still serving in Germany where the trial had been held. The new review and action was accomplished at Fort Hood, Texas, where the appellant was then stationed. Although appellant entered into an attorney-client relationship with his new substitute counsel, he was not advised that he was still entitled to the services of his original counsel to perform the actions prescribed by Goode. The right to those services could not be terminated for administrative convenience such as a change of duty stations. United States v. Elliott, 11 M.J. 1 (C.M.A.1981); United States v. Murray, 20 U.S.C.M.A. 61, 42 C.M.R. 253 (1970).

The limitation on substitute counsel acting for Goode purposes was not established until United States v. Iverson, 5 M.J. 440 (C.M.A. 1978), decided after the second review and action in this case.

that he obtain a waiver from appellant of all previous attorney-client relationships established in the case.

The new defense counsel wrote to appellant, advising him that a new review and action was necessary in his case and that he had been designated to act as his counsel. He included a waiver to be signed by appellant which recited, among other things, that his original trial defense counsel "[had] been relieved from active duty and . . . it [was] necessary to appoint a substitute counsel . . . ." The appellant responded that he had established an attorney-client relationship with the substitute counsel who acted on the second review and that he did not want to terminate that relationship. The services of the substitute counsel (at Fort Devens) were then obtained and he acted for appellant here.

The appellant now contends that "the [original] trial defense counsel's obligations [did] not automatically end when he [was] discharged from the United States Army." Appellant argues that he was never advised of his right to continue the relationship with that counsel in a civilian capacity, and that he has never voluntarily and knowingly terminated his right to his original counsel's services. We disagree with appellant on all points.

This is not a case in which appellant has a right to the continued services of his military counsel. That right ended when his counsel terminated his status as a member of the military. The counsel no longer remained on active duty and was no longer subject to orders regarding his duties. *Stanten v. United States*, 21 U.S.C.M.A. 431, 45 C.M.R. 205 (1972); *United States v. Lolagne*, 11 M.J. 556 (A.C.M.R.1981); *United States v. Harris*, 8 M.J. 668 (A.C.M.R. 1979), *pet. denied*, 9 M.J. 44 (C.M.A.1980); *United States v. Jones*, 4 M.J. 545 (A.C.M.R. 1977). Any right to the continued services of his military counsel in a civilian capacity would have to be as a result of an agreement between the two concerning that specific representation. *Cf. United States v.*

*Andrews*, 21 U.S.C.M.A. 165, 44 C.M.R. 219 (1972). There was no indication in the record of such an agreement and as appellant's last contact with that counsel was more than five years earlier (and four years before counsel got out of the service), the possibility of an agreement for continued representation was almost non-existent.

We view this case as one involving extraordinary circumstances, permitting the termination of the attorney-client relationship. *United States v. Stanten, supra; United States v. Lolagne, supra.* Appellant points to the length of the appellate proceedings and argues that the Government should not be able to avail itself of the discharge of counsel as an extraordinary circumstance because the delays were caused by Government errors. It is true that had the original defense counsel been served in Germany initially or had he been brought into the proceedings with the first new review and action at Fort Hood, the appellant's right would have been protected, but the Government did not intend in either of those instances to deny the appellant a right or to impede the protection of his interests. Each time the Government acted in good faith and believed it was complying with the law. It was only through subsequent decisions (*Goode, Cruz-Rijos,* and *Iverson*) [3] that the Government's actions were determined to be improper.

Even if we assume that separation of defense counsel from the service was not a sufficient reason to terminate the attorney-client relationship, the appellant would be due no relief because in this latest instance he knowingly and voluntarily severed that relationship when he rejected the newly proffered counsel and stated he wanted the substitute defense counsel to continue to represent him in the matter. The facts here are analogous to those in *United States v. Annis*, 5 M.J. 351 (C.M.A.1978). In *Annis*, the detailed military counsel was reassigned after trial but before the convening authority took his action. A new military defense counsel was substituted for post-trial proceedings. Thereafter, Annis

**3.** *See* footnote 2, above.

hired a civilian counsel but also requested that the substitute military counsel continue to assist. The Court of Military Appeals concluded that the absence of an objection to the departure of the original counsel who was the only counsel present throughout the trial and the request for the continued help of substitute counsel amounted to a waiver of any error in the termination of the original attorney-client relationship.[4] That Court found that the purpose of *Goode* was fulfilled and the accused could not be heard to complain. So, too, in this case.

## II

 The appellant alleges that the staff judge advocate misadvised the convening authority as to the offenses of which he was convicted. We agree. In the latest (third) post-trial review in this case, the staff judge advocate used the same review as was used by his predecessor in the second review. The substitute defense counsel focused his rebuttal and comment primarily on clemency considerations, as he had done with the previous rebuttal to and comment on the second review. Through numerous statements by military and civilian personnel he sought to establish that appellant had been rehabilitated and had served honorably after completing his sentence to confinement; that for more than two years, appellant served as a private E–1 in a non-promotable status while awaiting the results of appellate review; and that due to family hardship, appellant had to request excess leave status.

The thrust of the rebuttal was toward disapproval of the bad-conduct discharge. In response, the staff judge advocate told the convening authority that he "should consider these statements in determining an appropriate sentence ..." and he should weigh that rebuttal "against the serious nature of the offenses, *which included an aggravated assault with a knife* ..." (emphasis added). The staff judge advocate recommended approval of the sentence ad-

judged and the convening authority so acted.

The error in the advice is that appellant was acquitted of the "aggravated assault with a knife" offense. We believe the misstatement, coming as it did in the addendum to the review commenting on defense counsel's plea for disapproval of the discharge, prejudiced the appellant. Considering the length of time this case has been in the appellate process, a return to the convening authority for a fourth review and action is not appropriate. We will take corrective action by approving only that portion of the sentence which has been served.

The findings of guilty are affirmed. Only so much of the sentence is affirmed as provides for confinement at hard labor for four months and forfeiture of $217.00 pay per month for four months.

Judge GARN and Judge HANFT concur.

---

4. We perceive the hiring of the civilian counsel as a neutral factor insofar as the issue in this