## UNITED STATES

v.

**Sergeant Tony V. HARDY, FR163–58–8299, United States Air Force.**

**ACM 30759 (f rev).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 24 June 1993.

Decided April 17, 1996.

Appellate Counsel for the Appellant: Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Captain Harold M. Vaught, and Major George F. May.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Lieutenant Colonel Michael J. Breslin, and Major Barnard N. Madsen.

Before HEIMBURG, GAMBOA, and SENANDER, Appellate Military Judges.

## OPINION OF THE COURT UPON FURTHER REVIEW

HEIMBURG, Senior Judge:

This case raises the question: When may an attorney who was appointed post-trial due to an "irreconcilable conflict" between the client and his trial defense lawyer, sever his own relationship with the client? We hold that the appointed lawyer may sever the relationship unilaterally for good cause. Moreover, we find good cause here for the counsel's severance, and affirm.

### Background of the Case

The appellant pled guilty before a military judge, sitting as a general court-martial, to making a false claim against the United States. Article 132, UCMJ, 10 U.S.C. § 932 (1988). He was sentenced on June 24, 1993, to a bad-conduct discharge, confinement for 18 months and reduction to airman basic (E–1). The convening authority reduced the term of confinement to 15 months pursuant to a pretrial plea agreement, and approved the sentence as thus modified.

The appellant first expressed dissatisfaction with his trial defense counsel, Captain S, in a six-page letter to the convening authority submitted as part of his clemency matters. R.C.M. 1105. Asserting his innocence, the appellant complained that Captain S pressured him into agreeing to a pretrial plea agreement and pleading guilty. He also alleged that investigative agents lied about what he told them during interviews, making his actions appear criminal.

Captain S continued to represent the appellant in post-trial processing of the case. This was error. See United States v. Cornelious, 41 M.J. 397 (1995). On May 30, 1995, we returned the case to the convening authority for a new staff judge advocate's recommendation; we also ordered that appellant be provided substitute post-trial counsel. Finally, we determined that, based on the record of trial, appellant's claim of ineffective assistance of counsel was without merit.

The appellant's case came back to this Court on September 20, 1995. The convening authority's staff judge advocate had prepared a new staff judge advocate's recommendation on June 22, 1995. In response, the appellant, assisted by a military defense counsel, Captain B, submitted a "Request for Clemency" and a "Petition for Clemency," both dated August 21, 1995. See R.C.M. 1105(b). The petition, signed by Captain B, a military defense counsel, averred that Major W was assigned to represent the appellant for post-trial matters on June 22, 1995, but "had to withdraw as Sgt Hardy's defense counsel due to a conflict of interest." Captain B stated she was appointed to represent the appellant on August 2, 1995, and asked the convening authority to consider in mitiga-

tion the impact on the appellant's life of the prolonged delay in post-trial processing of the appellant's case. Neither of the defense-submitted matters complained that Major W had acted improperly in withdrawing from representation. The convening authority took a new action on August 24, 1995, and forwarded the case to this Court.

On October 25, 1995, the appellant filed a supplemental assignment of error in which he alleged that the counsel appointed to represent him in post-trial matters, Major W, withdrew unilaterally and without good cause. In support of this claim the appellant submitted an affidavit which stated that "I was under the impression that I didn't have any say" in whether Major W was "forced off my case." The appellant complained that Major W unilaterally withdrew from representing him against his wishes, even though he would have been willing to waive any conflict, if he had been given the opportunity.

The Court was unable to resolve the issue on the record available, having no evidence of the nature of the supposed conflict of interest. Based on the appellant's allegations, we ordered Major W to file an affidavit with the Court. *See United States v. Lewis,* 42 M.J. 1 (1995). We directed Major W to address the attorney-client relationship, the nature of the conflict of interest he perceived, what he communicated to the appellant about the conflict, and whether he asked the appellant to consent to continued representation. If he did not ask the appellant to consent to continued representation, we asked Major W to explain the reason.

The Court received Major W's affidavit on February 8, 1996. In the affidavit, Major W stated he was detailed to represent the appellant in presenting new post-trial matters to the convening authority on or about July 7, 1995. Major W said he entered into an attorney-client relationship in which he discussed the appellant's claim that his trial defense counsel was ineffective. *See* R.C.M. 1106(f). In light of this Court's opinion that the record of trial did not support the appellant's initial claim, Major W decided that further pursuit of the issue would require him to interview Lieutenant Colonel B, the chief circuit defense counsel, who supervised both Captain S and Major W. Major W stated that Colonel B had a policy that all defense counsel under her supervision must discuss with her the terms of any offer for a pretrial plea agreement. Believing that Captain S must have discussed with Colonel B how to proceed with the appellant's case, Major W telephoned her to talk about that conversation. When he explained to Colonel B the reason for his telephone call, Colonel B declined to be interviewed about the appellant's case.

After this telephone call, Major W talked with the appellant. He advised the appellant that there was a serious conflict between the appellant's interests—which included investigating and pursuing the claim of ineffective assistance of counsel against Captain S—and Major W's own interest in not attacking his boss. Major W stated the appellant was willing to waive the conflict, expressing his desire to keep Major W as his counsel. Nevertheless, Major W determined that the conflict would materially affect the quality of his representation of the appellant, and withdrew from the case after only a week or two of representation. Captain B, a defense counsel from outside the circuit who was not supervised by Colonel B, was appointed to assist appellant.

### Arguments of Appellate Counsel

■ Appellant urges this Court to set aside the convening authority's action yet again. He argues that Major W was not justified in withdrawing from his case, since Major W's perceptions of a conflict did not rise to the level of a "truly extraordinary circumstance rendering virtually impossible the continuation" of the attorney-client relationship. *United States v. Iverson,* 5 M.J. 440, 442 (C.M.A.1978). The appellant argues that Major W did not know whether a real conflict existed. He did not know that his supervisor, Colonel B, had concurred in Captain S's advice, much less that Colonel B was implicated in ineffective assistance to the appellant. Therefore, the appellant argues, any conflict was "speculative" and not sufficient good cause to sever the attorney-client relationship against his wishes.

Appellate government counsel, on the other hand, point to AIR FORCE RULES OF PROFESSIONAL CONDUCT, Rule 1.7, which states, in pertinent part:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) The lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) The client consents after consultation....

Government counsel argue that the test of Rule 1.7 equates to "good cause" for severance. In this case, Major W did not "reasonably believe" his representation would be unaffected by the conflict, so he was required to withdraw from representation, even against the appellant's wishes.

### The Law

From the outset, we observe that none of the case law squarely addresses the appellant's situation. The seminal cases about severance concern the relationship between a trial defense counsel and his client. Major W was not the trial defense counsel, but was appointed long after the trial had been completed. Nevertheless, we find ample guidance from the case law to resolve this situation.

The cases teach us that an existing attorney-client relationship can be severed only in one of three ways: an express release from the accused, a judicial order, or other good cause. *United States v. Acton*, 33 M.J. 536, 538 (A.F.C.M.R.1991), *aff'd* 38 M.J. 330 (C.M.A.), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). "Good cause" means a "truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship." *Iverson; United States v. Smith*, 35 M.J. 138, 141 (C.M.A.1992). The question here is whether "good cause" includes the type of conflict Major W perceived.

### Good Cause?

We have previously held that an accused may waive a conflict of interest resulting from the situation where trial defense counsel represented a witness for the prosecution. *United States v. Herod*, 21 M.J. 762 (A.F.C.M.R.1986). The situation facing Major W differed materially: it was his *own interest*, not that of another client, which conflicted with that of his client.

Contrary to the appellant's argument, we believe the correct standard to apply to this situation is not whether there is proof of actual conflict of interest; rather, it is *what Major W believed*. Unlike conflicts of interest which involve an attorney's other clients, the important factor in this situation is what the attorney believed. An attorney's effectiveness in representing a client is materially affected *by his perception* that successful representation may require an attack on his boss, regardless of whether that attack proves necessary.

For the same reason, a client cannot consent to representation by an attorney who reasonably believes that his representation will be materially affected by a conflict with his own personal interests. Therefore, the appellant's complaint that he "didn't have any say," while a correct analysis of the situation, is not a basis for relief.

We hold that, when an attorney "reasonably believes" that the perceived conflict between his own interests and those of the client will *adversely affect* the quality of representation, the attorney has good cause to sever the relationship, even against the wishes of the client. *See* Rule 1.7, *supra*. In our view, there is no contradiction between Rule 1.7 of the AIR FORCE RULES OF PROFESSIONAL CONDUCT and the cases which we have cited requiring "good cause" to sever an existing attorney-client relationship. When a defense counsel perceives a conflict between his personal interests and those of his client, that situation constitutes a "truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship." *Iverson*, 5 M.J. at 442.

### *Ineffective Assistance of Captain S*

A claim of ineffective assistance of counsel requires proof of two elements: incompetence and prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A.), *cert. denied*, 510 U.S. 1010, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993), quoting *United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987). The appellant complained about Captain S's representation, but has not supplied any basis for overcoming the presumption of competence concerning his representation. *See Lewis*, 42 M.J. at 6. We continue to find this assignment of error to be without merit. *United States v. Caylor*, 40 M.J. 786 (A.F.C.M.R.1994), *pet. denied*, 42 M.J. 102 (C.M.A.1995).

### *Conclusion*

We conclude the findings and the sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Judges GAMBOA and SENANDER concur.