UNITED STATES, Appellee,

v.

**Staff Sergeant Michael D. SPRIGGS, United States Army, Appellant.**

**ARMY 9601685.**

U.S. Army Court of Criminal Appeals.

4 June 1998.

---

For Appellant: Captain T. Michael Guiffre, JA (argued); Colonel John T. Phelps II, JA; Major Michael E. Hatch, JA; Lieutenant Colonel Michael L. Walters, JA (on brief); Major Holly S.G. Coffey, JA; Captain Patricia A. Harris, JA.

For Appellee: Lieutenant Colonel Frederic L. Borch III, JA (argued); Colonel Joseph E. Ross, JA; Major Randy V. Cargill, JA, USAR (on brief); Captain Elizabeth N. Porras, JA.

Before EDWARDS, Senior Judge, KAPLAN and CAIRNS, Appellate Military Judges.

## OPINION OF THE COURT

CAIRNS, Judge:

A panel of officer and enlisted members convicted the appellant at a fully-contested general court-martial of dereliction of duty, distribution of marijuana (three specifications), adultery (two specifications), and solic-

itation of another to distribute a controlled substance in violation of Articles 92, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 912a, and 934 (1988)[hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a dishonorable discharge, confinement for fifteen years and six months, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant asserts two errors in his Article 66, UCMJ, appeal: (1) that the military judge erred when he denied the appellant's request for individual military counsel (IMC) because the denial severed appellant's attorney-client relationship with a former active duty judge advocate; and (2) that the sentence is inappropriately severe. After consideration of the record, briefs, and oral argument, we disagree with the assertions of error and affirm.

## FACTS

On 23 May 1996, the appellant was apprehended and placed into pretrial confinement on charges of distributing marijuana. Captain Novak, an officer assigned to the U.S. Army Trial Defense Service, was detailed as appellant's defense counsel and represented him at the pretrial confinement hearing conducted the following day. On 27 June 1996, the appellant requested the convening authority to make Captain Maus, a reserve judge advocate, available to represent him as IMC. In his written IMC request, the appellant asserted that he had an existing attorney-client relationship with Captain Maus, who had represented the appellant at a previous court-martial while Captain Maus was on active duty, in that "CPT Maus has spoke (sic) to [appellant] about this case, and represented him in a prior court-martial." The staff judge advocate did not submit the IMC request to the convening authority, but rather returned it to the appellant's detailed defense counsel, stating that Captain Maus had been released from active duty three days prior to the appellant's request.

On 25 July 1996, during the initial Article 39(a), UCMJ, session of the appellant's trial, when the military judge advised the appellant of his rights to counsel, the appellant requested to be represented by Captain Maus as his IMC, with Captain Novak retained as detailed counsel. The appellant told the military judge, "I've talked to [Captain Maus] before everything started. Once everything got kicked off, when I got my charges read, I basically talked to him on the telephone ... about representing me in this case."[1] The appellant's detailed defense counsel argued that the appellant had established an attorney-client relationship with Captain Maus regarding this case; however, he submitted no evidence to substantiate the claim. Without receiving any evidence on the issue, the military judge ascertained through the representations of the appellant and counsel that: Captain Maus had been on terminal leave when the appellant was apprehended and confined; Captain Maus had been released from active duty at the time the appellant executed his IMC request; Captain Maus had been assigned to Presidio of Monterey prior to his release from active duty; Captain Maus had represented the appellant at a previous court-martial; and Captain Maus had told appellant that he would represent him in this case "if he could." The appellant did not assert that the government acted in bad faith by releasing Captain Maus from active duty in an effort to deprive him of his counsel of choice. After learning that Captain Maus was a member of the Individual Ready Reserve (IRR), the military judge ordered the government to process the IMC request in accordance with Army regulations[2] by forwarding it to Captain Maus' IRR commander.

The appropriate IRR commander subsequently denied the IMC request, concluding that Captain Maus was not reasonably available because he had repeatedly refused to volunteer for active duty for the purpose of representing the appellant. Captain Maus declined voluntary active duty orders because he had just begun his civilian employ-

---

1. The original charges were preferred on 24 May 1996, the same date on which appellant was informed of the charges.

2. Army Reg. 27–10, Legal Services: Military Justice, para. 5–7 (24 Jul. 1996) [hereinafter AR 27–10].

ment and was filling in for his superior, who was trying a capital murder case. In denying the IMC request, the commander explained that a member of the IRR may only be involuntarily recalled to active duty in time of war or national emergency. Although counsel and the military judge apparently concurred with this interpretation of law, none of the parties at trial recognized that 10 U.S.C. § 12301 authorizes involuntary activation of a reservist at any time, without a declaration of war or national emergency, for a period of fifteen days.

When the issues were next considered on the record, neither the counsel nor the military judge addressed severance of the attorney-client relationship. Instead, they litigated whether Captain Maus was reasonably available, given his reserve status and refusal to consent to reentry on active duty. The military judge denied the appellant's motion to compel production of Captain Maus.

On appeal, the appellant submitted the following affidavit executed by Captain Maus:

> On or about 23 May 1996, while I was on terminal leave and working in a law firm in El Paso, Texas, I spoke with [appellant] regarding legal issues he was facing and I gave him legal advice. In fact, I remember speaking with him prior to 23 May 1996, regarding his legal problems, but I don't remember the exact dates.

## LAW

■ In the military justice system, an accused has the right to be represented at a general or special court-martial by a detailed military counsel or military counsel of his own selection, if the individually-selected military counsel is reasonably available. The accused may also be represented by civilian counsel, if provided by him at no expense to the government. Article 38(b), UCMJ; Rule for Courts–Martial 506 [hereinafter R.C.M.]. The Manual for Courts–Martial lists those officers who are deemed not reasonably available because of their duty assignments and authorizes the Secretary concerned to

promulgate additional rules governing reasonable availability.

In exercising that authority, the Secretary of the Army has set forth in AR 27–10, para. 5–7, guidance for making availability determinations. The regulation provides that, notwithstanding the availability of the requested counsel, "if an attorney-client relationship exists between the accused and the requested counsel regarding matters that relate solely to the charges in question, the requested counsel will ordinarily be considered available to act as individual military counsel." AR 27–10, para. 5–7e.

The elements required to form an attorney-client relationship are set forth in cases concerning the closely-related issue of when communications are protected by the privilege arising from the attorney-client relationship. *United States v. McCluskey,* 20 C.M.R. 261, 1955 WL 3563 (C.M.A.1955); *United States v. Kellum,* 23 C.M.R. 882, 1957 WL 4604 (1957). Based on a policy to scrupulously protect communications between clients and lawyers, the Court of Military Appeals articulated the following prerequisites for establishing an attorney-client relationship:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client ... [are protected as part of the attorney-client relationship].[3]

■ Because the policy considerations differ on the issue of entitlement to counsel, however, the threshold requirements are higher "when the question is whether an attorney-client relationship has been sufficiently established for purposes of *entitling* an accused to representation by" his individually-requested military counsel. *United States v. Taylor,* 3 M.J. 947 (N.C.M.R.1977)(emphasis added). Analysis of case law "reveals that a viable attorney-client relationship for the purpose of entitlement to counsel is one in which the counsel has engaged actively in the preparation and pretrial strategy of the case." *Taylor,* 3 M.J.

---

**3.** *McCluskey,* 20 C.M.R. at 267 (citing Wigmore, *Evidence,* 3d ed., § 2292).

at 951 (citing *United States v. Catt*, 1 M.J. 41 (C.M.A.1975); *United States v. Eason*, 45 C.M.R. 109, 1972 WL 14135 (C.M.A.1972); *United States v. Timberlake*, 46 C.M.R. 117, 1973 WL 14461 (1973); *United States v. Murray*, 42 C.M.R. 253, 1970 WL 7062 (C.M.A.1970); *United States v. Tellier*, 32 C.M.R. 323, 1962 WL 4495 (C.M.A.1962)).[4]

■ Once established, the attorney-client relationship may be severed only by the accused's express release of the attorney, by a court order, or for other "good cause." *United States v. Hardy*, 44 M.J. 507, 510 (A.F.Ct.Crim.App.1996); *United States v. Acton*, 33 M.J. 536, 538 (A.F.C.M.R.1991). Absent good cause, an accused may not be denied the services of an individually-requested military attorney with whom he has established a bona fide attorney-client relationship regarding particular charges when the attorney has engaged actively in pretrial preparation and strategy in defense of those charges. "Good cause" has been defined as "a truly extraordinary circumstance rendering virtually impossible the continuation of the established relationship...." *United States v. Iverson*, 5 M.J. 440, 442 (C.M.A. 1978). Under the Manual for Courts–Martial, good cause "includes physical disability, military exigency, and other extraordinary circumstances which render the ... counsel ... unable to proceed with the court-martial within a reasonable time." [5] "The severance of an existing, viable attorney-client relationship without good cause dictates reversal regardless of the amount of prejudice...." *Taylor*, 3 M.J. at 949 (citing *Catt*, 1 M.J. 41).

■ Under this court's precedent, a military defense counsel's release from active duty severs the attorney-client relationship. *United States v. Richter*, 37 M.J. 615 (A.C.M.R.1993); *United States v. Lolagne*, 11 M.J. 556 (A.C.M.R.1981). *See also, United States v. Greenwald*, 37 M.J. 537 (A.C.M.R.

1993). The rationale is that the departure of a defense counsel from active duty constitutes good cause for severance of the attorney-client relationship. *United States v. Harris*, 8 M.J. 668 (A.C.M.R.1979); *United States v. Jones*, 4 M.J. 545 (A.C.M.R.1977).

■ Nevertheless, an accused and former military counsel may affirmatively enter into a voluntary agreement extending the attorney-client relationship beyond the counsel's departure from active duty, so long as the defense counsel then acts as civilian counsel at no expense to the government. *United States v. Andrews*, 44 C.M.R. 219, 1972 WL 14079 (C.M.A.1972). However, a military defense counsel may not be held on active duty, with or without his concurrence, beyond his service appointment merely to maintain an existing attorney-client relationship. AR 27–10, Appendix C, para. C–1b(2).

## DISCUSSION

■ In order to perfect entitlement to Captain Maus as his IMC, the appellant had the burden at trial, as he does on appeal, to establish that he had entered into a bona fide attorney-client relationship with Captain Maus regarding these charges, and to show that Captain Maus actively participated in the preparation and pretrial strategy of the case. R.C.M. 905(c); *Taylor*, 3 M.J. at 951. Our review of the record reveals scant evidence, if any, of an attorney-client relationship between the appellant and Captain Maus regarding these charges, and no evidence that Captain Maus actively engaged in pretrial preparation and strategy of this case.

The appellant made an assertion at trial, and in his written IMC request, that he had an attorney-client relationship with Captain Maus, and the detailed defense counsel echoed that assertion. However, they offered no evidence and made no offer of proof on the issue; they simply concluded that an

---

4. The Navy's service regulation governing individually selected counsel has incorporated this principle by defining the attorney-client relationship to exist "when counsel and accused have had a conversation which is privileged and counsel had engaged actively in the preparation and pretrial strategy of the case." *United States v. Gnibus*, 21 M.J. 1, 7 (C.M.A.1985). The Army's regulation has not been similarly refined.

5. Rule for Courts–Martial 505(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES, (1995 ed.). R.C.M. 505(d) authorizes competent authority to change the detailed counsel after formation of the attorney-client relationship for such good cause.

attorney-client relationship existed. It was not until this appeal, when appellant submitted Captain Maus' affidavit, that the appellant affirmatively offered evidence or made an offer of proof as to the existence of the relationship. Even in the affidavit, Captain Maus is vague on the issue of the existence and nature of any attorney-client relationship regarding these charges.

Whatever the nature of that relationship was, it did not arise because Captain Maus was detailed as defense counsel by competent authority. *See* AR 27–10, para. 6–9. Understandably, the appellant sought out Captain Maus, who was no longer on duty as a military defense counsel, because Captain Maus had represented him successfully in a prior court-martial. However, the appellant failed in his burden to establish the existence of a bona fide attorney-client relationship regarding this case. Furthermore, he made no showing whatsoever that Captain Maus actively engaged in pretrial preparation and strategy of this case. Accordingly, we hold that the appellant was not entitled to Captain Maus as his IMC. *Taylor,* 3 M.J. at 951.

Assuming, arguendo, that the appellant had successfully established the existence of an attorney-client relationship that would entitle him to Captain Maus as IMC under the *Taylor* rationale, we find that the relationship was legally severed by Captain Maus' departure from active duty. *Richter,* 37 M.J. 615; *Lolagne,* 11 M.J. 556; *Harris,* 8 M.J. 668; *Jones,* 4 M.J. 545. This case demonstrates the wisdom of the rule that counsel's departure from active duty constitutes good cause to sever the attorney-client relationship. First, unless the departed counsel is a member of the reserve component, the Army has no authority to compel or pay for the services of the attorney. Second, even if the counsel is a reservist, as in this case, unless the counsel volunteers for active duty to try the case, the Army and the accused would be limited to the fifteen days of involuntary active duty authorized by law in which to prepare for and try the case. In this case, the trial alone lasted six days. Our experience leads us to conclude that fifteen days is, as a general proposition, inadequate time to investigate, prepare, and try a general court-martial under normal conditions. Third, all too often, as was the case here, the departed counsel would be in no position to cast aside a civilian practice and devote the time and energy necessary to provide soldiers with effective assistance of counsel in serious criminal proceedings. Accordingly, we are confident that counsel's departure from active duty is a circumstance which renders the continuation of the attorney-client relationship virtually impossible. *Iverson,* 5 M.J. at 442. The sound rule that applies, then, is that absent government misconduct, the routine departure of counsel from active duty constitutes good cause which justifies the severance of a pre-existing attorney-client relationship.

We have considered the other assignment of error and those errors personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge EDWARDS and Judge KAPLAN concur.